In re Stephen John FREY, Elaine May Frey, Debtors.

Bankruptcy No. 1–82–00659.

United States Bankruptcy Court, M.D. Pennsylvania.

Nov. 15, 1983.

Bruce C. Bankenstein, Manifold, Linebaugh & Bankenstein, York, Pa., for debtors.

Lawrence V. Young, York, Pa., trustee.

## MEMORANDUM

ROBERT J. WOODSIDE, Bankruptcy Judge.

### DENYING CONFIRMATION

On July 16, 1982, the debtors filed a petition under Chapter 13 of the Bankruptcy Code. They filed a plan of arrangement on August 2, 1982. However, pursuant to an objection made by Household Finance Consumer Discount Company (Household), to the confirmation of their plan, the debtors amended their schedules and filed a new plan under Chapter 13 on February 1, 1983. Likewise, Household found that plan objectionable and it was amended by the debtors on February 18, 1983. We held a confirmation hearing on March 24, 1983.

Household has raised the following issues to the confirmation of the debtors' plan: (1) That the plan lacks feasibility under section 1325(a)(6) because it fails to provide a cushion against eventualities; (2) That the plan would modify Household's secured claim in the debtors' residence in violation of section 1322(b)(2) by deaccelerating its mortgage; and (3) That Household would be denied the allowable amount of its claim under the plan in violation of section 1325(a)(5). We will address those issues in the order presented.

### (1) Chapter 13 Feasibility

Subsection 1325(a)(6) of the Bankruptcy Code provides that: "The court shall confirm a plan if—... (6) the debtor will be able to make all payments under the plan and to comply with the plan." This subsection alludes to the feasibility of the debtors' plan. Household presumes the infeasibility of the debtors' plan because it fails to provide a cushion against eventualities. By eventualities, Household means the possibility that the plan will fail due to unexpected contingencies such as: unemployment, disability and inflation. For authority to support its contention that the debtors' plan is "too tightly constructed," Household relies on the cases of In re Belka, 13 B.R. 607 (Bkrtcy.W.D.Mich.1981) (where a cushion of $9.00 a month was inadequate to offset the affects of inflation) and In re Perskin, 9 B.R. 626 (Bkrtcy.N.D.Tex.1981).

As debtors' brief notes, the latter case is ironically good authority for approving their plan with respect to its feasibility. In the Perskin case, the court approved a plan although no monthly cushion was budgeted to meet contingencies, because the plan had resiliency and debtors' expenses were well funded. The court's rationale was that:

(b)y its very nature, a Chapter 13 payment plan balances debtor's present abilities against the future uncertainties confronting both the debtor and society. Inflation is inevitable if inestimable. As such, courts are faced with the dilemma

of balancing a plan's feasibility against its good faith. The more money set aside by the debtor for the purposes of satisfying future unknown contingencies, the greater his danger of running afoul of the good faith requirement. (citation omitted).

*Perskin,* 9 B.R. at 635.

Similarly, we find that the debtors' plan has resiliency and is well funded. The debtors have a monthly income of one thousand four hundred eighty-eight dollars ($1,488) to which their plan allots nine hundred dollars ($900) for their personal expenses and five hundred eighty-eight dollars ($588) for creditors. The amount for creditors anticipates payments to unsecured creditors of 12% of their claims. The expenses budgeted by the debtors leaves a moderate cushion against inflationary prices. In addition, one of the debtors, Stephen Frey, testified that he expects to receive salary increases from his employer. Although no assurances exist that increases will be forthcoming, Frey has received such increases in the past.

Moreover, Frey dispelled Household's other concerns about unforeseen contingencies. Frey has extensive medical and disability coverage through his employer. The debtors also have homeowner's insurance for the protection of their property. We conclude that the debtors' plan proposes an adequate cushion against eventualities and hence is feasible.

#### (2) Cure of Default and Deacceleration

Household argues that the debtors' plan to cure their default by paying the arrearages in installments violates the section 1322(b)(2) prohibition against modification of claims secured by the debtors' residential real property. When Household accelerated the debtors' mortgage, their entire indebtedness became due and owing in the amount of eight thousand five hundred thirty-two dollars and eleven cents ($8,532.11). Under the debtors' financial circumstances, they would be unable to repay the accelerated amount within a three (3) year plan.

Household's argument arises out of an apparent conflict between sections 1322(b)(3) and 1322(b)(5). Citing *In re Pearson,* 10 B.R. 189 (Bkrtcy.E.D.N.Y.1981), Household contends that no cure of a default can be effectuated because it has already accelerated the mortgage. However, we agree with debtors' analysis that *In re Pearson* was overturned by the Second Circuit *In re Taddeo,* 685 F.2d 24 (2nd Cir. 1982).

The Second Circuit clarified the meaning of "curing a default" within the context of the Bankruptcy Code by its holding that:

When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate" . . .

. . . .

Secondly, we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be modifications of claims.

*Taddeo,* 685 F.2d at 26–27. Bankruptcy Courts in other jurisdictions have followed the Second Circuit's holding. *See e.g. In re Masnorth Corp.,* 28 B.R. 892 (Bkrtcy.N.D. Ga.1983); *In re Young,* 22 B.R. 620 (Bkrtcy. N.D.Ill.1982); and *In re Hardin,* 16 B.R. 810 (Bkrtcy.N.D.Tex.1982). In the absence of a Third Circuit ruling, we also will follow the Second Circuit's holding. Accordingly, we conclude that the debtors may deaccelerate their mortgage and reinstate their payments.

In the alternative, Household has argued that a three (3) year payment plan is an "unreasonable time" under section 1322(b)(5) in which to pay the arrearages of one thousand eighty-five dollars ($1085). We disagree. Although the debtors were

only eight (8) months in arrears on their mortgage, they have other secured and unsecured creditors to satisfy. In this case, we find that a three (3) year payment schedule is a reasonable arrangement.

### (3) Allowable Amount of Claim

■ Household also wants the Plan disapproved because it fails to provide for interest, fees and costs in determining the secured claim and fails to provide for interest payments under the plan. We agree with Household that the plan is deficient in these two areas.

Section 1325(a)(5) provides in pertinent part that:

(a) The court shall confirm a plan if—

(5) with respect to each *allowed secured claim* provided for by the plan—

. . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) *the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;* . . . .

11 U.S.C. § 1325(a)(5) (1978) (Emphasis added).

The first question to be determined is what is the amount of the "allowed secured claim provided for by the plan." This determination is made in accordance with Section 506(a) and (b).

Subsection (b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

11 U.S.C. § 506 (1978).

■ The debtors in their brief argue that 506(b) does not apply because the value of the house does not exceed the amount of the two secured parties plus the claimed

homestead exemption of the debtors. There is therefore no equity from which to pay interest. The difficulty with this argument is that it ignores the plain language of the statute. As long as the property is worth more than the secured claim there shall be allowed interest to the creditor. The debtors cannot use their exemption to preclude a creditor from obtaining interest under this section.

Household is therefore entitled to interest on the arrearages to determine the amount of its allowed secured claim. This interest will accrue until the final order confirming the plan. The plan thus should set forth the amount of arrearages plus interest to the date set for hearing on the confirmation of the plan as the allowed secured claim to be paid under the plan.

We think Collier's on Bankruptcy has succinctly and correctly set forth the law as it applies to installment payments of an allowed secured claim in a chapter 13 plan.

"Section 1325(a)(5)(B)(ii) requires the court to determine the value of property to be distributed under the plan, as of the effective date of the plan. In other words, the court must ascertain the then *present value* of the property *to be distributed.* In order to implement section 1325(a)(5)(B)(ii) the court must capitalize deferred payments by converting the deferred payments proposed to be distributed under the chapter 13 plan into an equivalent capital sum as of the effective date of the plan. Section 1325(a)(5)(B)(ii) cannot be faithfully implemented simply by comparing the sum total of all deferred payments proposed by the plan with the amount of the allowed secured claim. An appropriate discount factor must be arrived at by the court, so as to fairly discount value proposed to be given in the future on account of the allowed secured claim.

The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever

interest rate is equivalent to the discount rate selected by the court or agreed upon by the parties. Accordingly, in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a chapter 13 plan need only propose to pay interest on the face amount of the allowed secured claim at the appropriate discount rate over the course of the payment extension period."

5 Collier on Bankruptcy, para. 1325.01 at p. 1325–26 (15th ed. 1979).

 The Court recognizes that different rates of interest have been applied in other cases and there are valid arguments to support either the legal rate or market rate but the contract rate is fixed and has been agreed upon by the parties. We think that the contract rate should be used both in determining the "allowed secured claim" and for setting amortized payments over the life of the plan. *See In re Einspahr,* 30 B.R. 356 (Bkrtcy.E.D.Pa.1983) and *In re Evans,* 20 B.R. 175 (Bkrtcy.E.D.Pa.1982).

Household has argued that it is entitled to attorney's fees and costs under section 506(b) and while we agree, since we will allow the debtors to cure their default, attorney's fees or costs are inappropriate unless actually incurred and agreed to pursuant to the terms of the loan agreement. *See Burns v. Home Federal Savings and Loan (In re Burns),* 16 B.R. 757 (Bkrtcy.M.D.Ga.1982). That is because we will cure the default through the Chapter 13 plan by placing "the parties in the position they would have been if no default had occurred." *First Investment Company v. Custer (In re Custer),* 18 B.R. 842, 847 (Bkrtcy.S.D.Ohio 1982). Upon the cure of the default, no damages arising out of a prior breach of the loan agreement can exist. Because no evidence was presented that attorney's fees were actually incurred pursuant to the debtor's default, we will award none.

Household has also requested payment of its counsel fees incurred by its objecting to confirmation of the debtors' plan. But, those counsel fees were not actually incurred as an incident of the debtors' de-

fault. Nor was any agreement of the parties admitted into evidence which specifically provided that the debtors would pay Household's bankruptcy counsel fees. In the absence of an agreement to the contrary, the American common law rule applies and the parties must pay their own counsel fees and court costs. *See In re Roberts,* 20 B.R. 914 (Bkrtcy.E.D.N.Y.1982).

Accordingly, we will enter an appropriate order.