**In re Gerald W. SMALL, Debtor.**

**Bankruptcy No. 85–01960K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 15, 1986.

As Amended Oct. 17, 1986.

Mitchell W. Miller, Philadelphia, Pa., for debtor.

Gary E. McCafferty, Philadelphia, Pa., for Fleet Real Estate Funding.

James J. O'Connell, Philadelphia, Pa., Chapter 13 Standing Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

This case presents to us the important and pervasive issue of whether a mortgagee may make a claim for interest on arrearages on a residential mortgage from a Chapter 13 debtor, even when the mortgage fails to provide for same. We believe that no provision of the Bankruptcy Code provides the answer and resort to Pennsylvania state law regarding residential mortgages is necessary. We conclude that the pertinent Pennsylvania law decisively directs that such interest cannot be collected, and therefore the Objection of the Debtor here to that portion of the mortgagee's

claim of such interest in the amount of $589.09 must be sustained.

Per a Stipulation of Facts of the parties dated September 22, 1986, we find that, on May 15, 1985, the Debtor filed a petition and plan under Chapter 13 of title 11 of the United States Code. The Debtor scheduled his first mortgagee, Fleet Real Estate Funding Corporation (hereinafter "Fleet"), as the holder of a secured claim of $3,500.00 for "mortgage arrears" and an additional $4,500.00 for a "secured claim." On June 20, 1985, Fleet filed a Proof of Claim, seeking mortgage arrearages of $4,231.75, and further indicating that its "total debt," or its entire claim against the Debtor, was $10,285.07. The figure for arrearages included "interest on said arrearages in the amount of $589.09."

The loan document, i.e., the mortgage, per the parties' Stipulation, does not provide for payment of interest on arrearages, "although it does provide for the accrual of interest on the unpaid balance of principal," and "for the payment by the mortgagor (Debtor) to the mortgagee (Fleet) for the payment of late charges if monthly payments are not timely made by the mortgagor."

On September 5, 1985, the Debtor filed an Objection to Fleet's Proof of Claim, raising several issues, all of which have been resolved except a contention that the "interest in the amount of $589.09 ... should not be allowed." After an October 15, 1985, hearing to consider this Objection, this Court, on February 21, 1986, per the Honorable William A. King, Jr., denied the Debtor's Objection to Fleet's Proof of Claim. No Opinion was drafted, but a citation was made to the decision of Chief Judge Emil F. Goldhaber of this Court in *In re Nesmith*, 57 B.R. 348 (Bankr.E.D.Pa. 1986), a decision which is presently on appeal to the United States District Court, at Civil Action No. 86–1553, before the Honorable Anthony J. Scirica.

On March 3, 1986, the Debtor filed a notice of appeal from Judge King's Order, at Civil Action No. 86–2070. On July 18,

1986, the District Court, per the Honorable Norma L. Shapiro, entered an Order remanding the matter to the Bankruptcy Court because "[t]he parties have not been able to agree on stipulated facts for purposes of this Appeal, [t]he parties agree that remand to the bankruptcy court for fact finding is necessary if they cannot stipulate facts," and hence a remand was necessary.

After a conference with·Counsel on September 8, 1986, we entered an Order of September 9, 1986, directing the parties to file a Stipulation of Facts on or before September 23, 1986, and to file any Briefs supplementing their District Court Briefs on or before October 8, 1986. The Stipulation of Facts was filed on September 22, 1986, thus curing the difficulties with the record noted by Judge Shapiro. As a supplement to his Brief, the Debtor remitted a copy of the Briefs filed on behalf of the Appellant-Debtor in *Nesmith*. Fleet declined our invitation to supplement its previous Brief.

We consider the issue before us a difficult one to resolve, because the answer is not spelled out anywhere in the Code, and different sections of the Code which the parties and the other courts which have wrestled with this issue have cited are less than totally clear and are in some senses contradictory in providing guidance in reaching the appropriate result. We note that the two (2) Courts of Appeals which have addressed the issues, *In re Terry*, 780 F.2d 894 (11th Cir.1986); and *In re Colegrove*, 771 F.2d 119 (6th Cir.1985), have reached contrary results. The result in *Terry* supported the position of the Debtor here, and the result in *Colegrove* supported the position of Fleet. Unlike *Terry*, *Colegrove* was not a unanimous decision, but was accompanied by a vigorous dissent.

Perhaps offsetting the four-to-two vote of the Circuit Judges in favor of the Debtor are a series of decisions of Chief Judge Goldhaber of this Court, prior to *Nesmith*, *In re McCall*, 57 B.R. 642 (Bankr.E.D.Pa. 1986); *In re Einspahr*, 30 B.R. 356 (Bankr. E.D.Pa.1983); and *In re Evans*, 20 B.R.

175 (Bankr.E.D.Pa.1982); the initial decision of Judge King in this case; and the only other decision on this issue known to us by a Pennsylvania bankruptcy judge, *In re Frey*, 34 B.R. 607 (Bankr.M.D.Pa.1983) (per Woodside, B.J.), all of which support the position of Fleet.

The cases which have held in favor of Fleet find support for their result in 11 U.S.C. §§ 1325(a)(5)(B) and 506(b) of the Code, which provide as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

...

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; ...

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose.

Most of the decisions supportive of the Debtor's position rely upon 11 U.S.C. §§ 1322(b)(2) and 1322(b)(5) of the Code, which provide as follows:

Subject to Subsections (a) and (c) of this Section, the plan may— ...

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time

and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

We believe that, to the extent that any of the foregoing decisions claim to find support for their positions directly in the Code, they are mistaken. Rather, we believe that this is an area which the Code has left open, requiring a resort to state law to find the correct answer. Application of state law leads us rather easily to a result in favor of the Debtor.

The *Colegrove* majority begins from its citation of unassailable authority in the Court's prior decisions in *In re Hardy,* 755 F.2d 75 (6th Cir.1985); and *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982), for the principle that interest must generally be paid to provide both a secured and an unsecured creditor with the true "value" of their claims, per the 11 U.S.C. § 1325(a)(5)(B)(ii) requirement. As to a secured claim of which the value of the secured property exceeds the claim (an "oversecured claim"), § 506(b) expressly allows "interest on such claim," at least in certain instances. Therefore, the Court concludes that "[i]t would be anomalous" to deny similar treatment to a secured mortgagee. 771 F.2d at 122.

Judge Goldhaber, in *Evans,* which his subsequent decisions for the most part simply follow, also relies upon these sections, stating the following, at 20 B.R. 177 n. 3:

Although the debtor did assert at the hearing that Pennsylvania law precluded North East from obtaining interest on its interest charges, we conclude that it is not prohibited in this case. Under Pennsylvania law, a creditor is not entitled to the compounding of interest on a debt unless there is an express statutory authorization or a specific contract provision so providing. *Acker v. Provident Nat'l Bank,* 512 F.2d 729, 739 (3d Cir.

1975). *See also, Haas v. Pittsburgh Nat'l Bank,* 526 F.2d 1083 (3d Cir.1975). In the instant case there is both an express statutory authorization (in § 506(b) and 1325(a)(5)(B) of the Code) and a specific contract provision (the last paragraph of page 1 of the mortgage agreement) which permit the compounding of interest in this instance.

Judge Woodside relied principally upon Judge Goldhaber's decisions and a quote from Collier which now appears at 5 COLLIER ON BANKRUPTCY, § 1325.06, at 1325–36 to 1327–37 (15th ed. 1986).[1]

The *Terry* Court and the *Colegrove* dissent both contend that the reasoning of the foregoing cases overlooks the significance of 11 U.S.C. §§ 1322(b)(2) and 1322(b)(5). *Terry* concludes that "[t]he legislative history indicates that section 1322(b) was intended to create a special exception to section 1325(a)(2)(B)." 780 F.2d at 896–97. The dissent in *Colegrove* holds that allowing interest to the mortgagee "clearly modifies the contract between the creditor and debtor in contravention of Section 1322(b)(2)." 771 F.2d at 124.

While we reach the same result as the *Terry* Court and *Colegrove* dissent, we cannot agree that it is "clear" from the Code, let alone from legislative history, that §§ 1322(b)(2) or 1322(b)(5) have any impact whatsoever on § 1325(a)(5)(B). We therefore do not join these courts to the extent that their opinions can be read as holding that any provision of § 1322(b) directs the appropriate result. Rather, we believe that the absence of a particularly pertinent Code provision requires resort to state law. However, we do agree that the legislative history of § 1322(b) reveals the error in the holdings that § 1325(a)(5)(B) or 506(b) command a result in favor of the mortgagee.

In placing the issues presented in a proper perspective, we note our reliance upon the encyclopedic Opinion of a 10–4 majority of the Fifth Circuit Court of Appeals sit-

---

1. At the time that this section was quoted by Judge Woodside in the 1979 edition of Collier, it was apparently placed elsewhere. However, the passage quoted appears intact in the present version at the place indicated herein.

ting en banc in *Grubbs v. Houston First American Savings Ass'n*, 730 F.2d 236 (1984). In that Opinion, by the citation to extensive legislative history, the Court points out that there is a significant difference between "the curing of any default," which is the subject matter of § 1322(b)(5), and "modification of the rights of holders of secured claims," which is the subject matter of § 1322(b)(2). *Id.* at 242–46. What *Grubbs* concludes, and with which we heartily agree, is that § 1322(b)(2) prevents the residential mortgage debtor from modifying the mortgagee's secured *claim*, but specifically allows the mortgagee to cure any default in payment *arrearages. Id.* at 246. *Accord: In re Taddeo*, 685 F.2d 24 (2d Cir.1982).

The relevance of *Grubbs* to this case is not its ultimate holding that § 1322(b)(5) permits a residential mortgage debtor to cure a mortgage payment arrearage by means of a Chapter 13 Plan. That result was never questioned in Pennsylvania, apparently due to the presence of a law usually identified as "Act 6" of 1974, 41 P.S. § 404, which guarantees a residential mortgage debtor the right to cure a default by paying *only* payments due, reasonable attorney's fees, and reasonable late charges at any time within one (1) hour of a foreclosure sale.[2]

Rather, it is the emphasis of the distinction between the "secured claim," which

relates to the entire balance owed to the mortgagee, as opposed to the "default," which is the arrearages, which renders *Grubbs* so useful to the present analysis. It is only the entire "secured claim" itself which cannot be modified. Clearly, the payment terms of the "default" can be modified by a plan which cures the arrearages. In a long-term obligation such as a residential mortgage, as opposed to the relatively short-term auto loan in *Whitman* and personal loan in *Hardy*, this distinction is significant.

Once this distinction is grasped, it can be readily concluded that § 1325(a)(5)(B) and § 506(b) have no pertinence whatsoever to the resolution of the issue in controversy. These sections both relate to the treatment of the "secured claim," not to an arrearages in "default" in a long-term obligation, the "secured claim" relative to which will continue in place long after the Plan is consummated. Section 1325(a)(5)(B) requires only that the mortgagee receive the "present value" of its *claim*. Section 506 assures the preservation of the full value of the *claim* by authorizing interest, fees, costs, and other charges "provided for under the [security] agreement."

The pertinence of § 506(b) is further weakened by the phrase last quoted. The agreement in issue here, while it provides for fees, costs, and late charges, does *not* provide for interest on arrearages. While

---

**2.** We quote the entire text of 41 P.S. § 404, because, as noted at pages 692–93 *infra*, it is very significant to our disposition of this case. That section provides as follows:

§ 404. Right to cure a default

(a) Notwithstanding the provisions of any other law, after a notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than three times in any calendar year, may cure his default and prevent sale or other disposition of the real estate and avoid acceleration, if any, by tendering the amount or performance specified in subsection (b) of this section.

(b) To cure a default under this section, a residential mortgage debtor shall:

(1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence of default and the exercise of an acceleration clause, if any;

(2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;

(3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.

(4) Pay any reasonable late penalty, if provided for in the security document.

(c) Cure of a default pursuant to this section restores the residential mortgage debtor to the same position as if the default had not occurred.

we are aware, as perceptive counsel for Fleet was quick to call to our attention, that the grammatical construction of § 506(b) might lead to the conclusion that the phrase beginning "under the agreement" does not modify the phrase "interest on such claim," we quote and accept the following conclusion of Collier on this point.

> The sentence structure of section 506(b) contains an ambiguity that has created some confusion over the applicable rate for computing interest to be allowed under section 506(b). The phrase "interest on such claim" is separated by a comma from the phrase "any any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." Such separation apparently derived from the need the drafters felt to make clear that interest was to be allowed only to the extent it accrued on the claim (as opposed to any other amount). However, such separation raises the question of whether the phrase "provided for under the agreement under which such claim arose" applies to "interest in such claim" or only to "any reasonable fees, costs, or charges."
>
> Notwithstanding the misplaced comma or commas, post-petition interest should be computed at the rate provided in the agreement under which the claim arose, the so-called "contract rate" of interest. The great majority of courts which have considered the issue have utilized the contract rate, and this result appears consistent with prior case law.

3 COLLIER, *supra*, § 506.05, at 506–41 to 506–42 (footnotes omitted).

We therefore conclude, contrary to the holding of Judge Goldhaber in *Evans*, that no "express statutory authority" for the allowance of interest on arrearages to residential mortgagees situated similarly to Fleet here exists. Unlike the factual circumstances in the *Evans* case, we are presented here, by a stipulation of the parties, with a loan document which "does not provide for payment of interest on arrearages." We therefore conclude that we must resort to Pennsylvania state law to resolve the issue before us. We note that we do agree with Judge Goldhaber that "compounding of interest on a debt" is not generally allowed in Pennsylvania and, more specifically, is prohibited in any residential mortgage.

With respect to Judge Woodside's heavy reliance upon Collier, we must note that pertinent revisions in Collier subsequent to his decision, while leaving intact the passage upon which he relied, expressly support the position of the Debtor here. The pertinent revisions are as follows:

> [I]nterest and costs payable when a default is cured under section 1322(b)(5) are determined under applicable nonbankruptcy law.

Although *In re Colegrove*, a decision of the Court of Appeals for the Sixth Circuit, takes a contrary view, the reasoning of the majority in that case does not withstand analysis. Essentially, the Court held that interest was required by section 1325(a)(5), despite the fact that the creditor's rights had not been subjected to modification pursuant to that provision. In support of its conclusion, the majority argued that it had previously held that even unsecured creditors were entitled to interest in some cases under the best interests of creditors test, so it would be "anomalous" to deny interest to a secured creditor in a cure situation.

However, as the dissent noted, neither the present value test of section 1325(a)(5) nor the best interests of creditors test of section 1325(a)(4) is applicable where a default is cured pursuant to section 1322(b)(5). The present value tests compensate creditors whose rights have been modified by reductions in payments, interest charges, or the total amount due; where a default is cured, however, the creditor's rights are not modified. Since the contract terms remain in force (except for the injunction against foreclosure) the time value of money is irrelevant. The creditor receives the interest, charges and costs to

which it is entitled under the contract and applicable nonbankruptcy law. Typically, the creditor is not entitled under its contract to receive interest on previously accrued interest (compound interest) or on attorneys' fees and costs, as would result under the *Colegrove* Court's decision.

5 COLLIER, *supra*, ¶ 1322.09, 1322–21 to 1322–22 (footnotes omitted).

It is doubtful that, enlightened by this analysis from the very source on which he relied, Judge Woodside would continue to adhere to his conclusions in *Frey*. This passage, again, emphasizes the distinction between the "secured claim" and the arrearage "default" which is muddled by the Courts relying on §§ 1325(a)(5)(B) and 506(b) as authority for resolution of this issue.

Having thus explained why we cannot accept the reasoning of the *Colegrove* majority and the local decisions which are consistent with it, we must point out that we do not agree totally with the analysis of the Court in *Terry* or the *Colegrove* dissent, either. As a result, the scope of our decision is narrowed, and limited to Pennsylvania residential mortgagors. Although the analysis of legislative history in *Grubbs*, apparently adopted by those courts, is sound, such legislative history is no substitute for actual Code provisions.

The Code nowhere provides that § 1322(b) is a "special exception" to § 1325(a)(5)(B), as the *Terry* Court holds. In fact, such a conclusion is completely unnecessary to resolution of the issue in question, since we believe that § 1325(a)(5)(B), as well as § 506(b), address an entirely different consideration from arrearages. Hence, no "special exception" to these sections need be made to dispose of their pertinency to the issue at hand.

Similarly, we do not believe that the prohibition upon modification of the rights of secured claimants, per § 1322(b)(2), goes so far as to provide affirmative support to the conclusion that interest on arrearages cannot be claimed, as the dissenting judge in *Colegrove* held. Instead, we believe that

§ 1322(b)(2) addresses the distinct subject of the status of the secured claim, i.e., the mortgage balance, and hence has no impact either way on resolution of the issue before us.

To resolve the issue before us, we believe that we must turn to the parties' contract, and the manner in which that contract would be construed under applicable Pennsylvania state law.

The contract, although drafted by the mortgagee, contains no provision allowing the $589.09 charge for the amount of interest claimed by Fleet on its arrearages. This is an important beginning, and we again turn to Judge Goldhaber's observation in *Evans* that an "express statutory authorization or a specific contract provision" is prerequisite to allowance of such "compounding of interest" if no authorization is found for such charges in the Code.

Here, however, we have more, in the form of 41 P.S. § 404, quoted in full at page 9 n. 2 *supra*. This statutory provision gives a residential mortgage debtor the absolute right to cure his mortgage arrearage default and restore himself "to the same position as if the default had not occurred" upon the payment of "all sums ... due ... in the absence of default," performance of any other obligation in the mortgage of which there has been a default, payment of reasonable attorney's fees and costs, and late charges "if provided for in the security document." 41 P.S. §§ 404(c), (b). Conspicuous by its absence is any provision allowing the mortgagee to demand that the mortgagor pay interest on arrearages as an additional condition to cure the mortgage. The entire statutory provision is obviously intended to limit the demands which the mortgagee can make upon the residential mortgagor as a condition for totally curing his default. Thus, the provisions relative to attorney's fees, 41 P.S. §§ 404(b)(3) and 406, state that, even if greater charges are authorized by the mortgage document, the prerequisites for cure are limited to reasonable charges for such items as those set forth in 41 P.S. § 404(b). It therefore clearly follows that

allowance of additional charges not included in the mortgage documents as a condition for allowing the mortgagor to effect a cure is strongly contrary to the policy of Pennsylvania law pertinent to residential mortgages.

This strong statement of Pennsylvania state law policy carries the day for the Debtor here. We should, however, add our observation that much of the arrearages on a long-term residential mortgage already consist of interest and that, in addition to late charges which presumably compensate it for prejudice to its interests by payment delays, the mortgagee seeks to collect interest upon interest. This observation and the observation that adding interest to interest could result in a windfall to a mortgagee due to the mortgagor's Chapter 13 filing, is a consideration which makes us quite comfortable with the equities of our decision.

For all of the foregoing reasons, we must reluctantly part company with our brethren who have held to the contrary in *Evans, Nesmith,* and *Frey. But see Eaton Land and Cattle Co. v. Rocky Mountain Investments,* 28 B.R., 890, 892 (Bankr. D.Colo.1982); and *In re Brent-Pickell,* 12 B.R. 352, 357 (Bankr.S.D.Cal.1981) (departure from precedent is appropriate when cogent reasons command a contrary result). We shall therefore enter an Order sustaining the Objection of the Debtor to that portion of the claim of Fleet which constitutes interest on arrearages.