**In re Frances D. HARNED, Debtor.**

**Bankruptcy No. 93–13368DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 20, 1994.

Matthew W. Rocca, Law Offices of Stephen J. Koeck, Philadelphia, PA, for debtor.

David B. Comroe, Lipman, Freiberg, Comroe & Hing, Philadelphia, PA, for Boulevard Mortg. Co.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA, Trustee.

## *OPINION*

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Before this court is the Objection ("the Objection") of FRANCES D. HARNED ("the Debtor") to the amended proof of claim ("the Claim") filed by Boulevard Mortgage Company ("Boulevard"), the mortgagee of the Debtor's home. The Objection calls into question the important issue of the proper interest rate which must be paid on home-mortgage arrearages which a debtor seeks to cure in a Chapter 13 plan. Although the Supreme Court, in *Rake v. Wade,* —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), concluded that an oversecured creditor was indeed entitled to such interest, the Court left undecided the proper rate of interest and possibly the issue of whether an undersecured creditor is entitled to any such interest.

Unfortunately, the fractured manner in which the record has been developed here renders this case, like the previous case in which we addressed this issue, *In re Pagnotta,* 1993 WL 498197 (Bankr.E.D.Pa. Nov. 30, 1993), a poor candidate for a vehicle to make any broad pronouncements on this issue. We conclude that, because the Debtor has stipulated that Boulevard's claim is oversecured and did not succeed in introducing into the record any evidence of an appropriate interest rate different from the contract rate,

we have no choice but to permit Boulevard to include, in the Claim, interest on arrears at the latter rate, in this case eleven and a half (11½%) percent. We will therefore deduct only the excessive amount of $350, on other grounds, from the Claim. We do address, but do not decide, some of the issues which we must consider in deciding the issue of the proper interest rate on a complete record in the future.

## B. *FACTUAL AND PROCEDURAL HISTORY*

The Debtor filed the underlying individual Chapter 13 bankruptcy case on June 4, 1993. Along with her bankruptcy petition, the Debtor also filed a Chapter 13 plan of reorganization ("the Plan") on the same date. According to the Plan, Debtor will pay the Standing Chapter 13 Trustee ("the Trustee") $232.74 per month for 60 months. With this money, the Trustee was to pay, in the following order of priority, all allowed priority claims, all allowed claims secured by liens which are not avoidable pursuant to 11 U.S.C. § 522, and all other claims. There is no evidence of any secured or priority claims other than that of Boulevard. The total of all payments under the Debtor's Plan, as proposed, equals $13,964.74.

A confirmation hearing on the Plan was originally scheduled for October 21, 1993. October 12, 1993, was established as the last date to file proofs of claim. On July 1, 1993, Boulevard filed a secured proof of claim for mortgage arrears, attorney's fees, and costs in the amount of $21,029.20. Shortly thereafter, on July 26, 1993, Boulevard filed the Claim in issue, as an amended secured proof of claim, in the amount of $27,798.83. The difference between the original claim and the Claim is attributable solely to the addition of a $6,719.63 line item identified as "Property Preservation Costs," plus a $50 increment in attorneys' fees for preparation of the Claim. The Claim also recited that a judgment in foreclosure in the amount of $55,497.39 had been entered in favor of Boulevard and against the Debtor, and that the principal balance remaining due on the mortgaged debt was $35,544.77.

On the date first scheduled for the confirmation hearing, we continued the hearing until December 2, 1993, at the request of the Debtor. Prior to the continued confirmation hearing, the Trustee filed a motion to dismiss ("the TMTD") the Debtor's bankruptcy case on the ground of "infeasibility" because the secured claim of Boulevard exceeded the payments to be made under the Plan. *See In re Fricker,* 116 B.R. 431, 436 (Bankr. E.D.Pa.1990) (the Trustee's general practice in filing such objections is described). The TMTD and a continued confirmation hearing were scheduled on December 9, 1993.

The Debtor filed the Objection before us on December 8, 1993. Therein, she objected to, *inter alia,* the addition of "a cost in the amount of $6,719.63 for 'Property Preservation Cost' for which no explanation or itemization was provided...." Indeed, the description of the $6,719.63 line item lacks any meaningful detail. However, rather than simply providing more detail for this mysterious line item, Boulevard filed a response to the Objection in which it stated that "[c]reditor's Proof of Claim or Amended Proof of Claim speaks for itself and any attempt to paraphrase same is expressly denied. The Proof of Claim and/or Amended Proof of Claim is complete, accurate and reflects the full amount of charges made." We note that the combination of Boulevard's refusal to extend the courtesy of an explanation of the added cost to the Debtor and the Debtor's unwillingness or apparent inability to compel Boulevard to do so in timely fashion has resulted in unnecessary confusion and the waste of counsel's and the court's time, as described below. The Objection was scheduled for a hearing on January 13, 1994, and, upon request of the Debtor, we continued the confirmation hearing and the TMTD to this date as well.

The hearings on the Objection, confirmation, and the TMTD were, by agreement of counsel, continued again, to a date ultimately established as February 24, 1994. On the latter date, Boulevard requested a further continuance because of the unavailability of an allegedly significant witness, which was unopposed by the Debtor. However, since our own patience with both parties was wear-

ing thin, we entered an interim Order on February 24, 1994, reluctantly granting a continuance of the hearing on the Objection and rescheduling the hearings on all three matters for March 10, 1994. We also warned the Debtor that not only would "[n]o further continuances ... be granted," but that "this case may be dismissed on March 10, 1994, if the Plan cannot be confirmed on that date."

At long last, the parties assembled in our courtroom on March 10, 1994, to address the Objection. At that time, Boulevard disclosed that the "Property Preservation Costs" were in fact its computation of the interest on mortgage arrearages which would have to be paid to it by the Debtor over the life of the Plan. Because Boulevard had apparently not disclosed this fact to the Debtor earlier,[1] and the Debtor had apparently not attempted to flush it out, the Debtor was not prepared to put on testimony and introduce evidence which would refute Boulevard's claim of interest due, allegedly based on the rate set forth on the principal due in the parties' mortgage, or attempt to establish an alternative (and presumably lower) rate of interest to be paid on the arrearages. When the parties agreed that the Claim would be reduced by $350 on account of all other objections of the Debtor, the proper rate for charging interest on arrears was the only remaining impediment to resolving the Objection and confirmation. We decided, given the failure of this court to resolve this issue in *Pagnotta, supra,* or elsewhere, it was necessary to give the parties sufficient time to

prepare their respective cases on this issue. Thus, on March 11, 1994, we again "reluctantly" entered an Order continuing the hearings on all three matters until March 24, 1994. We further stated, in that Order, that we would permit "no further continuances of the hearing on the Objection" and that the parties "must present any Stipulation of Facts or evidence in support of their position[s] on this issue" at that time, again reciting that the Debtor "shall resolve all impediments to confirmation by the next listing or this case may be dismissed."

■ On March 24, 1994, the parties appeared before us and stipulated to certain facts which must necessarily constitute the record as to the disposition of the Objection. Specifically, the parties stipulated that the Claim should be reduced by $350 on account of excessive attorneys' fees; that the interest rate contained in the promissory note executed by Debtor in favor of Boulevard ("the Note") is eleven and a half (11½%) percent; that the $6,719.63 line item contained in the Claim represents the interest to which Boulevard claims it is entitled to on arrearages; and that there is equity in the secured property, *i.e.,* the Debtor's home.[2] The Debtor also attempted, unsuccessfully, to enter into evidence certain interest rates offered by area lenders on or about the petition date, as advertised in a local daily newspaper, the Philadelphia Inquirer.[3] No other testimony or evidence was offered by either party.

---

1. This revelation, as well as its failure to ultimately present any testimony relative to the Objection, raises serious questions about the good faith of Boulevard's request for a continuance due to the unavailability of its witness on February 24, 1994. Similar requests will be very reluctantly granted, if at all, in the future.

2. If the Schedules were considered, this stipulated fact would not be apparent, because the Debtor valued her home on the Schedules at $48,000. However, the parties' stipulation forecloses further consideration of this issue.

3. Despite our granting a previous request for a continuance to, *inter alia,* allow the Debtor time to ready her case on the interest rate issue, as the culmination of earlier continuances, the Debtor was, almost incredibly, not prepared to have her evidence in this issue properly entered into the record over the objection of Boulevard. In keep-

ing with its tactically uncooperative posture throughout this case, Boulevard was unwilling to stipulate that the rates that were advertised in the Philadelphia Inquirer were actually being offered on or about the date of the Debtor's petition by the lending institutions which had taken out the advertisements. Furthermore, according to the Debtor, Boulevard was "unable" to quote the Debtor the rate *it* offered on similar mortgage loans as of June 4, 1993 because, incredibly, it did not keep such records "as far back as June 6, 1993 [sic]...." " Debtor's Memorandum of Law In Support of the Debtor's Objection to the Claim of Boulevard Mortgage Company, at unnumbered pages 4–5 [hereinafter, "Debtor's Memorandum"]. The record is therefore devoid of any evidence regarding market rates of interest offered by home lenders at the time the Debtor filed her bankruptcy. *Compare Pagnotta, supra.* Nor are we at liberty to "pursu[e] copies of the Philadelphia Inquirer" in an

We took the Objection matter under advisement and invited both the Debtor and Boulevard to file Briefs on or before April 7, 1994, and April 14, 1994, respectively, per an Order of March 25, 1994. We also advised the Debtor that her last chance to file a confirmable plan would expire on March 31, 1994, and that therefore she should file an Amended Plan allowing for the worst case scenario of denial of her Objection on or before that date. A final confirmation hearing was scheduled on April 26, 1994, and we required that "[t]he Debtor must resolve all impediments to confirmation by [April 26, 1994] or this case will be dismissed." We hope that the Debtor took our advice, because dismissal will result if the Debtor has not filed an Amended Plan which can, in light of this decision, be confirmed on that date. *See In re Hadley,* 1994 WL 96969, at *6–*7 (Bankr.E.D.Pa. March 23, 1994) (court will not tolerate repeated failures to achieve a confirmable Chapter 13 plan).

## C. DISCUSSION

In *Rake, supra,* the Supreme Court concluded that an oversecured creditor was entitled to interest on arrearages which are paid over time, by reference to 11 U.S.C. §§ 506(b), 1322(b)(2), 1322(b)(5), and 1325(a)(5), thus overruling *In re Capps,* 836 F.2d 773 (3rd Cir.1987); and *In re Small,* 65 B.R. 686 (Bankr.E.D.Pa.1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987). Since that time, we have been aware that we would be called upon to decide an issue expressly left unanswered by the *Rake* Court, *i.e.,* what rate of interest must be paid on the arrearages in order to comply with these Code Sections.[4] Other related issues remain uncertain after *Rake,* including the entitlement of an undersecured creditor to interest on arrears.

In one previous post-*Rake* case before this court where the rate of interest issue was presented, *Pagnotta, supra,* the debtors failed to introduce evidence in support of an appropriate rate of interest other than the contract rate at nine (9%) percent, and we had no choice but to require the debtors to pay interest at that contractual rate and to forego making any broad pronouncements on the issue. *See id.,* 1994 WL 96969 at *1–*2. Although we are presenting a more in-depth discussion of the issue today, we are again hampered by a deficient record which does not allow us to draw a conclusion which differs in substance from the result in *Pagnotta.* Thus, as in *Pagnotta,* we conclude that Boulevard is entitled to the contract rate of interest on the arrearages, although we express some chagrin because the contract rate here is a relatively generous rate and Boulevard has displayed sharp practice to which the Debtor has unfortunately allowed herself to be victimized to prevent an adequate record from being established. Hopefully, this decision will provide guidance as to how a more complete and satisfying record and decision of this court can be attained.

At the outset, we note one distinction between the manner in which the issue of the rate of interest arises here from that in *Pagnotta.* There, the issue was raised by the medium of the secured creditor's objection to confirmation of the Debtor's plan. We found, under the reasoning on *Fricker, supra,* 116 B.R. at 437, that, in such a procedural setting, the debtor had the burden of overcoming the impediment to confirmation presented by the objection.

▆ Here, however, the issue of interest on arrears arises in the context of an objection to a proof of claim. In such an instance,

attempt to determine market rates of interest at the time the Debtor's bankruptcy petition was filed despite Debtor's invitation that we do just that. *See* Debtor's Memorandum, at unnumbered page 4.

Finally, although we have not been asked to do so, we cannot take judicial notice of any market rate figures because such are neither "facts" "generally known" within this jurisdiction, nor "facts" "capable of accurate and ready determination by resort to sources where accuracy cannot reasonably be questioned." Federal Rule of

Evidence 201(b). *See In re Cole,* 89 B.R. 433, 438–39 (Bankr.E.D.Pa.1988); and *In re Russell,* 72 B.R. 855, 860 (Bankr.E.D.Pa.1987). We doubt that even the Philadelphia Inquirer itself would lay claim to status as a source whose reliability, particularly in its advertisements, could not be questioned.

**4.** *See Rake, supra,* —— U.S. at —— n. 8, 113 S.Ct. at 2192 n. 8 ("Because the issue is not presented in this case, we express no view on the appropriate rate of interest that debtors must pay on arrearages pursuant to § 1322(b)(5).").

the claim is accepted as accurate until the debtor produces some evidence that it is in any respect inaccurate. *See In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3rd Cir. 1992); and *In re Lewis,* 80 B.R. 39, 40–41 (Bankr.E.D.Pa.1987). However, if and when such evidence is produced, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence. *See Allegheny Int'l, supra,* 954 F.2d at 173–74; and *In re Jordan,* 91 B.R. 673, 676, 683–84 (Bankr.E.D.Pa.1988).

There is language in *Rake,* —— U.S. at ——–––——, 113 S.Ct. at 2191–93, which suggests that, unlike deferral interest required to be paid, pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), on a claim paid in full under a Chapter 13 plan, *see In re Moore,* 117 B.R. 135, 142 (Bankr.E.D.Pa.1990); and *Jordan, supra,* 91 B.R. at 677–78, interest on arrears is an element of a secured creditor's "claim" for arrears. Therefore, unlike an attempt to append an inappropriate request for payment of deferral interest to a claim, *id.,* an attempt to append interest on arrears to a "claim" for arrears is not *per se* objectionable and subject to disallowance for that reason. *But see In re Battle,* 1994 WL 61463, at * 1 (Bankr.M.D.Ga. Feb. 24, 1994) (including interest on arrears in a proof of claim is objectionable, because doing so is tantamount to requesting unmatured interest on a claim, which is prohibited by 11 U.S.C. § 502(b)(2)).

■ The Debtor was therefore obliged to produce some evidence that the interest rate sought by Boulevard was inaccurate. Having failed to present any admissible evidence regarding current interest rates in the market, or even a clear assertion that she believed that the amount demanded was too high for any particular reason, *compare Jordan, supra,* 91 B.R. at 683–84, the Debtor failed to meet her necessary burden. Therefore, for this reason alone, we can and will deny the Objection as to the rate of interest on Boulevard's arrears asserted in the Claim.

We could, speaking literally as well as figuratively, end our Opinion at this point. However, in order to provide some guidance to the parties and other members of the bar regarding some of the unresolved questions regarding what will doubtless be a recurring issue, we will go on.

One of the first issues to be determined is whether a secured creditor must be oversecured to be entitled to recover interest on arrears. Confusion arises because the *Rake* Court emphasizes the limitation of its holding to oversecured mortgages at the outset of its Opinion. —— U.S. at ——, 113 S.Ct. at 2189. The legal discussion in the Court's Opinion goes on to discuss alternative grounds for its result, based on, first, 11 U.S.C. § 506(b), *id.,* —— U.S. at ——–––——, 113 S.Ct. at 2191–92, and then, subsequently, on § 1325(a)(5). *Id.,* —— U.S. at ——–––——, 113 S.Ct. at 2192–93. The Court holds that only where a mortgagee's claim is oversecured will § 506(b) apply to allow the secured creditor to receive interest on its claim. *Id.,* —— U.S. at ——, 113 S.Ct. at 2192. *See also, e.g., In re Barrett,* 136 B.R. 387, 392 (Bankr.E.D.Pa.1992).

However, if the term "secured claim" in § 506(b) is broad enough to include arrearages on a mortgage, contrary to our reading of the term in, *e.g., Small, supra,* 65 B.R. at 690, then it can be argued that the same term, as used in § 1325(a)(5), has the same broad meaning. Thus, it appears that, insofar as *Rake* relies upon § 1325(a)(5) for its result, interest on arrears should be collectible on oversecured and undersecured claims alike. A puzzlement remains, however, because it is unclear why the *Rake* Court discusses § 506(b) at all if § 1325(a)(5) is sufficient in itself to cover all circumstances where interest on arrears could be claimed. Moreover, *Rake* discusses § 506(b) first, as if it were the primary basis for the Court's holding. Finally, the *Rake* Court nowhere specifically states that undersecured mortgagees are entitled to interest on either pre-confirmation or post-confirmation arrears *per se,* although it appears that it could have easily done so and would have done so to provide guidance to the lower courts if this result followed directly from any aspect of its reasoning.

We have noted two post-*Rake* cases which discuss the issue of whether undersecured mortgagees are entitled to interest on arrears. The court in *In re Callahan,* 158 B.R. 898, 903–04 (Bankr.W.D.N.Y.1993), holds

that undersecured mortgagees must be paid interest on arrears. However, the result is based upon the rather unsatisfying rationale that it would be contrary to the courts' prior practices and "inequitable" to do otherwise. *Id.* See page 262 *infra* (suggesting that allowing interest on arrears in any circumstances is not particularly "equitable.")

A more reasonable treatment of the issue appears in *In re Brycki,* 161 B.R. 915 (Bankr.D.N.J.1993). The *Brycki* court holds that, pursuant to § 506(b), only an oversecured creditor can receive *pre*–confirmation interest on arrears, while, under § 1325(a)(5), oversecured and undersecured creditors alike can recover *post*-confirmation interest on arrears. *Id.* at 916–17. This holding finds partial support in the *Rake* Court's statement that § 1325(a)(5) addresses only post-confirmation interest, an observation consistent with our own decisions in *In re Klein,* 106 B.R. 396, 402 & n. 7 (Bankr.E.D.Pa. 1989); *In re Smith,* 92 B.R. 127, 129–31 (Bankr.E.D.Pa.1988), *rev'd in part sub nom. Smith v. Kissell Co.,* 98 B.R. 708 (E.D.Pa. 1989); and *In re Herbert,* 86 B.R. 433, 436–37 (Bankr.E.D.Pa.1988), *aff'd sub nom. Herbert v. Federal Nat'l Mortgage Ass'n,* 102 B.R. 407 (E.D.Pa.1989), that § 1325(a)(5) requires only post-confirmation payment of deferral interest. We are nevertheless somewhat reluctant to embrace the reasoning and holding of *Brycki* because it appears to us that the *Rake* Court could have easily explicitly stated that § 506(b) applied only to *pre*-confirmation interest and that § 1325(a)(5) required interest on arrears to be paid to undersecured mortgagees as well as oversecured mortgagees if it meant to so hold. However, nowhere does the *Rake* Court so hold, or expressly state anywhere that undersecured mortgagees are entitled to recover interest on arrears in any circumstances.

This issue need not be decided to resolve the instant controversy. The Debtor has stipulated that Boulevard is oversecured, and hence, under the holding in *Rake,* it is apparently entitled to interest on arrears under § 506(b) and to both pre-confirmation and post-confirmation interest on arrears. We assume that Boulevard's calculation of the $6,719.83 figure of interest on arrears in-cludes pre-confirmation and post-confirmation interest. Since the Debtor has provided no indication that the $6,719.83 figure asserted is improperly calculated on this basis, we find that we are obliged to accept it.

The second issue which we cannot resolve on this record, but which will undoubtedly recur in other cases, is what interest rate should be applied if a debtor *is* able to provide evidence of the "market rate" of interest. Proof of the "market rate" of interest, if not resolvable by stipulation with more cooperative lenders than Boulevard, appears to be easily accomplished by discovery or subpoena from the mortgagee creditor in issue or by testimony from an expert in the home mortgage industry, rather than by relying on newspaper advertisements.

Discussion of the rate issue in this Circuit requires consideration of the holding in *General Motors Acceptance Corp. v. Jones,* 999 F.2d 63 (3rd Cir.1993), expressly addressing the proper rate of interest to be applied in computing deferral interest under § 1325(a)(5). The *Jones* court holds that "the creditor's current rate for a loan of similar character, amount and duration" must be applied, *id.* at 70, although it allows a bankruptcy court

> to accept a plan utilizing the contract rate if the creditor fails to come forward with persuasive evidence that its current rate is in excess of the contract rate. Conversely, utilizing the same rebuttable presumption approach, if a debtor proposes a plan with a rate less than the contract rate, it would be appropriate, in the absence of a stipulation, for a bankruptcy court to require the debtor to come forward with some evidence that the creditor's current rate is less than the contract rate.

*Id.* at 70–71.

The Debtor argues that the reasoning of *Jones* as to deferral interest should be applied to interest on arrears. Cited in support is the holding on the issue of the proper interest rate on arrears is *In re Colegrove,* 771 F.2d 119, 123 (6th Cir.1985), a pre–*Rake* decision allowing interest on arrears which *Capps, supra,* declined to follow, but was upheld on the issue of allowability of interest on arrears generally in *Rake.* Although she

fails to cite same, the Debtor's position is supported by the only post-*Rake* and post-*Jones* decision in this Circuit, rendered by highly-respected Judge Warren W. Bentz in *In re Townsend,* 163 B.R. 272 (Bankr. W.D.Pa.1994).

Boulevard, meanwhile, argues that the contract rate should be uniformly applied, citing a series of pre-*Capps* decisions of this and other Third Circuit bankruptcy courts. *E.g., In re Frey,* 34 B.R. 607 (Bankr.M.D.Pa. 1983); *In re Einspahr,* 30 B.R. 356 (Bankr. E.D.Pa.1983) (Goldhaber, Ch. J.); and *In re Evans,* 20 B.R. 175 (Bankr.E.D.Pa.1982) (Goldhaber, Ch. J.). *But see In re Nesmith,* 57 B.R. 348 (Bankr.E.D.Pa.1986) (Goldhaber, Ch. J., cites *Colegrove, supra,* which applies the market rate, in support of the results in his earlier cases).

In its efforts to distinguish *Jones,* Boulevard also cites a number of decisions of this court, *e.g., Smith, supra,* 92 B.R. at 130; and *Herbert, supra,* 86 B.R. at 436–38, as well as those of other courts, *e.g., In re Rorie,* 98 B.R. 215, 218 (Bankr.E.D.Pa.1989) (Fox, J.); *In re Stratton,* 30 B.R. 44, 45–46 (Bankr. W.D.Mich.1983); and *In re Simpkins,* 16 B.R. 956, 965 (Bankr.E.D.Tenn.1982), which have emphasized that the considerations in determining a proper rate of interest on arrears and in ascertaining appropriate interest rates for deferral interest are different.

We note one post-*Rake* decision which agrees with Boulevard's reasoning on this point, *In re Sauls,* 161 B.R. 794 (Bankr. S.D.Tex.1993). The result in *Sauls* is based upon that court's conclusions that *Nobelman v. American Savings Bank,* — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), precludes a modification of a home mortgage, and that to allow interest on arrears to be paid at less than the contract rate would constitute such a modification.

However, the reasoning of *Sauls* can be contrasted with that of *In re Cureton,* 163 B.R. 494 (Bankr.E.D.Mich.1994). In *Cureton,* arising in the same Circuit as *Colegrove,* the court begins by stating that the *Rake* Court's reliance on § 1322(b)(2) suggests that *Colegrove* is overruled on this point. *Id.* at 495. However, the court ultimately concludes that, since the mortgage contract in

question does not provide for interest on arrears, as we suspect is generally the case, that contract cannot serve as the basis for determining the rate of interest on arrears. *Id.* at 495–97. A substantially lower market rate is therefore applied. *Id.* at 497.

We are not prepared to necessarily follow Boulevard on this point. It is true that the *Rake* Court relies upon § 506(b) in the first portion of its reasoning, which suggests a strong reliance on the terms of the parties' contract. However, in the second portion of its Opinion, it relies upon § 1325(a)(5). *See* page 260 *supra.* Although the issue of the current computation of deferral interest under § 1325(a)(5) may be a somewhat open issue in the Sixth Circuit, where *Cureton* arose, and may be completely open in the Fifth Circuit, in which *Sauls* arose, it is not an open issue in the Third Circuit in light of *Jones.* Also, the pre-*Rake* Third Circuit bankruptcy court decisions did not have the benefit of the result in *Jones,* and therefore we cannot give much weight to them.

Our review of post-*Rake* decisions regarding appropriate interest rates would be incomplete without mention of *In re Casey,* 159 B.R. 963, 964 (Bankr.M.D.Ala.1993), which applies a nine (9%) percent rate without any apparent explanation; and *Callahan, supra,* 158 B.R. at 902, which reiterates a local court pre-*Rake* custom of applying the New York state judgment rate, which is also nine (9%) percent.

We are not prepared to resolve at this time the issue of market rate versus contract rate where an appropriate record of both is made. That result might depend on the record made, and hence we are speaking in a vacuum at present. The general resolution of this issue is of course unnecessary to our conclusion that the contract rate of interest of eleven and a half (11½%) percent must be applied in the instant case because of the Debtor's failure to meet her burden of providing admissible evidence of any alternative to the contract rate.

■ We would, however, despite the presence of *Rake,* reiterate our observation in *Small,* 65 B.R. at 693, that allowing a mortgagee interest on arrears is allowing it to

recover a windfall, *i.e.*, interest on the interest portion of a mortgage payment, which is a particularly generous portion of the payment in the early stages of a mortgage. Therefore, it is difficult to totally apply the reasoning of *Jones*, which attempts to establish a "fair" rate of return for secured creditors, 999 F.2d at 67–70, and rejects the "costs of funds" approach because it is unduly oppressive to creditors, 999 F.2d at 67, in this context. We perceive no reason to be as charitable to secured creditors in determining the appropriate rate of interest on arrears due to them, since it is a windfall. They certainly ought to receive no more than they would on account of deferral interest, which is properly characterized as a "coerced loan" for the entire balance of a secured claim in *Jones*. 999 F.2d at 67–70. For the sake of equity, they should receive less.

To the extent that Boulevard suggests that *Jones* should not automatically be applied to the determination of the appropriate rate of interest on arrears, we agree. We have already held that *Jones* should not be applied in a Chapter 11 case in which no real market for the type of "coerced loan" contemplated by a plan exists. *See In re River Village Associates*, 161 B.R. 127, 137–39 (Bankr. E.D.Pa.1993). However, our conclusion that *Jones* should not be applied automatically is certainly not meant to suggest that creditors should receive a higher rate of interest on arrears than a deferral rate. Clearly, they should not. It must also be recalled that, in the future, the market rate may or may not be lower than a mortgagee's contract rate. *See Stratton, supra*, 30 B.R. at 44–45 *supra* (creditor argued unsuccessfully that the-then market rate of arrears of fourteen (14%) percent should be applied, rather than the nine (9%) percent contract rate).

## D. CONCLUSION

A final resolution of the outstanding issues relating to computation of interest on arrears on a more global basis must await the presentation of a fuller record and a thorough consideration of the issues raised in this Opinion by interested parties.

Returning to the case of the Debtor before us, we reiterate the necessity that she should have filed and served, on or before March 31, 1994, an Amended Plan which would pay off Boulevard's claim as allowed. We reiterate the deadlines established in our March 25, 1994, Order, although we will add an April 25, 1994, deadline for filing and serving Objections thereto, in order that the Debtor can be fully prepared for that hearing. We also reiterate that, if the Debtor's Amended Plan cannot be filed, this case will be dismissed.

Our Order follows.

### ORDER

AND NOW, this 20th day of April, 1994, after a hearing of March 24, 1993, on the Objection ("the Objection") of FRANCES D. HARNED ("the Debtor") to the amended proof of claim ("the Claim") filed by Boulevard Mortgage Company ("Boulevard"), and upon consideration of the Briefs submitted by the parties hereto, it is hereby ORDERED AND DECREED as follows:

1. The Objection is SUSTAINED in part only.

2. The Claim for Boulevard's arrears on its mortgage is reduced by $350, as agreed, to $27,448.83.

3. Boulevard and any other interested parties are directed to file and serve Objections to any Amended Plan filed by the Debtor pursuant to paragraph one of our Order of March 25, 1994, on the interested parties and the court in chambers on or before April 25, 1994.

4. The *final* hearing on confirmation of any Amended Plan filed, Objections thereto, and the Trustee's Motion to Dismiss remain scheduled on

TUESDAY, APRIL 26, 1994, AT 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

5. If the Debtor's Amended Plan is not confirmed at the foregoing confirmation hearing, this case will be dismissed.