In re Thomas P. & Susan A. CALLAHAN, Debtors.

In re Patrick J. & Maryellen A. FANNON, Debtors.

In re Ronald & Tonya GASTON, Debtors.

In re Clair & Mary D. KERRICK, Debtors.

In re Keith MILLER, Debtor.

In re James ORLANDO, Debtor.

In re Kipper STEVENS, Debtor.

In re Mariano & Sandra VELAZQUEZ, Debtors.

In re Glenn & Eletha WILLIAMS, Debtors.

In re Frank J. ZINGO, Debtor.

Bankruptcy Nos. 93–20452, 93–20402, 92–23406, 93–20386, 93–20401, 93–20187, 93–20990, 93–20453, 92–23407 and 93–21174.

United States Bankruptcy Court, W.D. New York.

Sept. 13, 1993.

As Amended Sept. 28, 1993.

George M. Reiber, Chapter 13 Trustee, Rochester, NY.

Marvin R. Baum, P.C., Buffalo, NY, for Chase Home Mortg. Corp. (in the Fannon case).

Peter Scribner, Rochester, NY, for all debtors.

Bradley P. Kammholz, Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, for First Federal, Sav. & Loan Ass'n (in the Stevens case).

JOHN C. NINFO, II, Bankruptcy Judge.

## BACKGROUND

Each of the above Debtors (the "Debtors") have Chapter 13 cases pending before the Court. In each case, the Debtors have been represented by the same attorney, have filed Chapter 13 plans and have attended one or more Section 341 meetings of creditors and confirmation hearings in connection with their cases and proposed plans. With the exception of the *Stevens* case, each of the confirmation hearings was held after the decision of the United States Court of Appeals for the Second Circuit in *In re Bellamy,* 962 F.2d 176 (2d Cir.1992), which allowed the bifurcation of home mortgage [1] claims into secured and unsecured claims, but prior to the decisions of the United States Supreme Court in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and *Rake v. Wade,* —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). The Chapter 13 plans in the *Callahan, Kerrick, Velazquez* and *Zingo* cases (the "*Callahan* Cases") provide for the repayment without interest or a present value factor of the prepetition arrearages due on the fully secured home mortgages on each of the Debtors' residences. The issues before the Court in the *Callahan* Cases are whether interest or a present value factor on arrearages must be paid to fully secured

---

**1.** Home mortgages are those which meet the definition of Section 1322(b)(2).

mortgage holders in order to meet the requirements of Sections 1322(b)(5) and 1325(a)(5), and if required to be paid, what is the applicable interest or discount rate. The first of these issues, whether interest on arrearages must be paid to the holder of a fully secured home mortgage, has been answered affirmatively by the United States Supreme Court in *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). However, the Supreme Court's decision in *Rake v. Wade* did not determine the applicable interest rate in such circumstances.

The Chapter 13 plans in the *Gaston, Stevens,* and *Williams* cases (the "*Gaston* Cases") also provide for the repayment without interest or a present value factor of the prepetition arrearages due on the home mortgages on each of the Debtors' residences. Unlike the *Callahan* Cases, however, the *Gaston* Cases involve the situation where even though the appraised fair market value of each of the Debtors' residences slightly exceeds the principal balance outstanding on each of the mortgages, the value is less than the principal balance plus the arrearages due. Therefore, the arrearages, to the extent that they are composed of other than principal, are unsecured. The issues before the Court in the *Gaston* Cases are whether the mortgage arrearages must be repaid with interest or a present value factor in order to meet the requirements of Sections 1322(b)(5) and 1325(a)(5), and if required to be paid, what is the applicable interest or discount rate.

The Chapter 13 plans in the *Fannon, Miller,* and *Orlando* cases (the "*Fannon* Cases") also provide for the repayment without interest or a present value factor of the prepetition arrearages due on the home mortgages on each of the Debtors' residences. In the *Fannon* Cases, the appraised fair market value of each of the Debtors' residences is less than even the outstanding principal balance due on the mortgages. Since at the time of the confir-

mation hearings in each of the *Fannon* Cases the United States Court of Appeals for the Second Circuit decision of *In re Bellamy* was binding in this District, the Court allowed the bifurcation of the home mortgage claims.[2] However, this Court had previously ruled in *In re Thompson,* 159 B.R. 127 (Bankr.W.D.N.Y.1993) that notwithstanding the bifurcation of a home mortgage claim, in order to take advantage of the cure provisions of Section 1322(b)(5), mortgage arrearages have to be paid in full and in addition to the bifurcated secured claim. Since the debtor's plan in the *Thompson* case provided for the repayment of the prepetition mortgage arrearages with interest at 9%, the Court did not have to decide the issues now presented for decision in the *Fannon* Cases which are the same issues as those in the *Gaston* Cases: whether interest or a present value factor must be paid on unsecured mortgage arrearages to meet the requirement of Section 1322(b)(5), and, if required to be paid, what is the applicable interest or discount rate.

## DISCUSSION

■ The following portions of Sections 1322(b) and 1325(a) of the Bankruptcy Code provide an essential statutory background for a discussion of the issues presented to the Court:

Section 1322. Contents of plan.

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

**2.** The United States Supreme Court has now determined that such home mortgage claims cannot be bifurcated. *Nobelman v. American*

*Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

(3) provide for the curing or waiving of any default;

* * * * * *

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Section 1325. Confirmation of Plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder . . .

Section 1322(b)(5) requires that a Chapter 13 plan which proposes to cure defaults on a home mortgage provide for the curing of the defaults within a reasonable time and prior to the completion of the plan. However, the Bankruptcy Code, court decisions, definitions of cure, and underlying mortgage documents do not provide clear guidance on how to actually effect a cure. Although the United States Supreme Court in *Wade* determined that curing the defaults on an oversecured home mortgage could include paying interest on the arrearages if otherwise available pursuant to Section 506(b), it acknowledged that the Bankruptcy Code does not dictate the terms of the required cure of a home mortgage in default whether the arrearages are secured or unsecured. *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). Although courts have attempted to define "cure," the definitions alone are not helpful in fashioning a cure. The United States Court of Appeals for the Second Circuit stated that "[C]uring a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code." *In re Taddeo*, 685 F.2d 24, 27 (2d Cir.1982). Since most, if not all, home mortgages contemplate and specifically provide for acceleration and foreclosure as the exclusive remedies upon default, the mortgage documents do not contain specific provisions or guidelines for the cure of defaults. Looking to New York State law is also not helpful, since in the absence of a bankruptcy proceeding New York State courts have consistently held that even in the exercise of their equitable powers they cannot "de-accelerate" a mortgage which has been properly accelerated by reason of the debtor's defaults in the payment of principal and interest where there is no fraud, bad faith or overreaching on the part of the mortgage holder. *See Graf v. Hope Bldg. Corp.*, 254 N.Y. 1, 171 N.E. 884 (1930). As a practical matter then, if home mortgage defaults are cured and de-accelerated outside of bankruptcy, it is as the result of negotiated agreements by the parties based on the facts and circumstances of each case.

Notwithstanding New York State law, in a bankruptcy proceeding, Section 1322(b)(5) provides that a debtor can cure home mortgage defaults in furtherance of a clear Congressional policy to allow debtors to save their homes provided that the other requirements of Chapter 13 can be met. Therefore, when the parties have not otherwise agreed to a cure, the Bankruptcy Court in the exercise of its equitable powers and sound discretion must determine the terms of a cure which it will insist upon to meet the requirements of Section 1322(b)(5) and, if the mortgage is fully secured, Section 1325(a)(5).

This Court believes that, since as set forth above there are no clear and practical guidelines now available, when required to determine the terms of such an

equitable cure it must do so in light of: (1) the policy of the Bankruptcy Code to allow debtors proceeding in good faith to cure home mortgage defaults and save their homes whenever reasonably possible; (2) the policy of the Bankruptcy Code, expressed by Section 1322(b)(2), to treat holders of home mortgages in some respects differently and more favorably than other creditors, in order to encourage lenders to continue making home mortgage loans to facilitate the purchase of homes; (3) the need to further an effective Chapter 13 program which accomplishes all of the goals of Chapter 13, including allowing debtors to propose and have confirmed plans which allow them to save their homes and to have those plans confirmed in a cost effective manner; and (4) the rights and remedies of the parties outside bankruptcy in state court mortgage foreclosure proceedings.

■ This Court further believes that establishing the terms of such an equitable cure on a case by case basis in each Chapter 13 case is not practical if there is to be an effective and successful Chapter 13 program which allows debtors to save their homes by curing home mortgage defaults in cost effective proceedings. Such a case by case approach would require both the home mortgage holders and the debtors to incur substantially increased expenses, including attorney's fees; delay the confirmation and completion of many Chapter 13 plans; and require the Court to become involved in the determination of a number of "cure" related issues including what is a reasonable time to cure.[3] Furthermore, when the additional time and expense that may be required are considered, the result in each case might not in fact be a more equitable cure.

Prior to the *Bellamy* decision, the entire Bankruptcy Court in the Western District of New York routinely used the New York State judgment interest rate[4] as the interest/discount rate to be paid on mortgage arrearages where the unpaid mortgage balance was fully secured. The Court did this so that Chapter 13 plans could be confirmed as meeting the requirement of Section 1325(a)(5)(B)(ii) that such a fully secured mortgage holder receive value, as of the effective date of the plan, which is not less than the allowed amount of its secured claim. Furthermore, prior to the *Bellamy* decision, no Bankruptcy or District Judge in the Western District of New York had allowed the bifurcation of a home mortgage claim or confirmed a Chapter 13 plan that did not provide that home mortgage arrearages were to be repaid with interest or a present value factor. As a result, Chapter 13 plans filed in this District routinely provided that home mortgage arrearages would be repaid together with interest or a present value factor of 9%.

■ This appears to have provided a welcomed administrative convenience not only to the Court, but to the Chapter 13 Trustee's Office, debtors and their attorneys and, since such plans were seldom objected to, mortgage holders and their attorneys. The use of the New York State judgment rate appears to have been viewed by all parties as an acceptable compromise in establishing an administratively convenient interest/discount rate and equitable cure, since: (1) it was what debtors would be required to pay on the arrearages if a judgment of foreclosure and sale were entered in a state court mortgage foreclosure proceeding on the date of the petition;[5] (2)

---

3. In the pending cases, the mortgage arrearages involved range from $822 to $18,334 to possibly $39,385 which could very easily result in different determinations as to what would be a reasonable time to cure and may result in some debtors not being able to save their homes.

4. Seldom revisited, the rate is a fixed rate which has been 9% since June 25, 1981 when it was increased from 6%.

5. In New York State when a mortgage holder sues for foreclosure, it ultimately obtains a judg-

ment of foreclosure and sale. The amount of the judgment consists of: (a) unpaid principal; (b) accrued interest on the unpaid principal at the mortgage rate to the date of judgment; (c) unpaid late charges, expenses and charges which can be added to the mortgage by its terms and which generally consist of attorney's fees, insurance, real estate taxes and inspection fees paid by the mortgage holder; and (d) if provided for in the mortgage, accrued interest on those expenses and charges to the date of judgment. The judgment of foreclosure and

although the debtor or the home mortgage holders at any given point in time might receive a benefit in light of prevailing market interest rates, the respective benefits would even out over time;[6] (3) it virtually eliminated the need to resolve the issue in each Chapter 13 case of what would be a reasonable time to cure the arrearages within the meaning of Section 1322(b)(5);[7] and (4) it made having Chapter 13 plans which would enable debtors to save their homes easier and less costly to confirm and complete. This promoted confidence on the part of all parties in the Chapter 13 program in the Western District of New York and as such was one of the principal reasons for its continuing success.

Therefore, this Court, in the exercise of its equitable powers and discretion, holds that to meet the requirements of Section 1322(b)(5) and, when there is an oversecured mortgage, Section 1325(a)(5), unless the parties otherwise agree to the terms of a cure, Chapter 13 plans must provide for the repayment of prepetition home mortgage arrearages together with a present value factor equal to the New York judgment interest rate until such arrearages are paid in full.[8] History and experience in this Court have proven that such a requirement furthers the policies outlined above.

The Court acknowledges the efforts and arguments made by the attorney for the Debtors in these cases and feels it should address some of these arguments in more detail.

An argument can be made that if prepetition mortgage arrearages can be repaid without interest or a present value factor, a greater percentage distribution can and will be made to unsecured creditors. In this District the term of most Chapter 13 plans with prepetition home mortgage arrearages already exceed three years and the Court does not believe that debtors generally would pass any savings in the curing of their home mortgage arrearages along to their unsecured creditors. Experience indicates that it is more likely that debtors would simply reduce the terms of their plans which would otherwise meet the requirements of Section 1325 for confirmation.

The Court is aware of the concern expressed by many that some of the home mortgages which now exist are simply income tax savings products where there was never any equity in the property over and above other existing mortgages to support them at the time of their initial placement. An argument can be made that these mortgages should not be treated the same as conventional purchase money mortgages or home equity mortgages as to which there was supporting equity at the time of placement. This Court believes that this issue must be addressed by Congress and until then debtors remain bound by the provisions of the Bankruptcy Code and their voluntary participation in obtaining these financing products.

The Court acknowledges the argument frequently made that it would be inconsistent with the scheme of the Bankruptcy Code for the Court to require that an undersecured mortgage be cured in the same fashion as a fully secured mortgage. That might be true if the focus were on the secured or unsecured nature of the mort-

---

sale thereafter accrues interest at 9%, which is the New York State judgment rate, until paid in full. As a result, outside of bankruptcy, for a debtor to redeem under New York State law after the entry of a judgment of foreclosure and sale, the debtor would have to pay interest at 9% on the components of what are traditionally included in Chapter 13 home mortgage arrearage claims.

**6.** Using this administratively convenient rate at a time when interest rates were over 20% in the 1970's would result in a substantial benefit to debtors with adjustable rate mortgages if the Court used the rate provided in the mortgage or set a floating market rate. However, in times of low interest rates, such as we are now experiencing, debtors might be slightly disadvantaged by this administratively convenient rate.

**7.** This is because the payment of the arrearages with an acceptable interest/discount rate assured a measure of compensation for the mortgage holder's loss of the use of the money.

**8.** First Federal Savings and Loan Association of Rochester asserts that the interest/discount rate should be the rate provided in the home mortgage.

**904**

gage or the arrearages, but this Court believes that the proper focus must be on the requirement and concept of a meaningful and equitable cure. With that focus, there is no inconsistency or inequity if the cure of an undersecured mortgage is the same as an oversecured mortgage.

 It has been argued that to effect a cure a debtor should only be required to repay the unpaid mortgage arrearages over a reasonable time on a dollar for dollar basis without interest or a present value factor to compensate the mortgage holder for its loss of the use of the money which it would have had if the required payments had been timely made. This Court believes that this would be inequitable. Many of the debtors in this District who file Chapter 13 plans to cure home mortgage defaults and save their homes have not made mortgage payments for six months to several years or have substantial monetary defaults (in the *Orlando* and *Gaston* cases, the arrearages are over $13,000 and in the *Fannon* case, they are over $18,000). To allow these debtors as much as four, or in some cases, almost five additional years to repay those arrearages without a present value factor would be inequitable to the mortgage holder and might be seen as rewarding some debtors for not paying their mortgages or not filing Chapter 13 at an earlier and more appropriate time when the arrearages were less extensive. Furthermore, to this Court, not requiring that a present value factor be paid to the mortgage holder would be an inequitable and unrealistic interpretation of the concept of cure to the extent that cure requires a meaningful return to pre-default conditions. Although the standard under Section 365 for curing defaults in executory contracts is different (prompt cure versus cure within a reasonable time), courts, including this one, have often held that when the proposed cure is not immediate but is to be accomplished over time, interest or a present value factor must be paid. *In re Mako, Inc.*, 102 B.R. 818 (Bankr. E.D.Okl.1988).

## CONCLUSION

To meet the requirements of Section 1322(b)(5) and, when the home mortgages are fully secured Section 1325(a)(5), the plans in each of these pending cases must provide for the repayment of prepetition home mortgage arrearages over the term of the plan together with a present value factor equal to the New York State judgment interest rate until the arrearages are paid in full.

**IT IS SO ORDERED.**