**In re Rita HARDWARE, Debtor.**

**Bankruptcy No. 194–18023–260.**

United States Bankruptcy Court, E.D. New York.

Dec. 4, 1995.

---

George Poulos, Astoria, NY, for debtor.

Berkman, Henoch, Peterson, & Peddy, P.C. by Tracey D. Schreiber, Garden City, New York, for mortgagee, Ontra, Inc.

## DECISION ON DEBTOR'S MOTION OBJECTING TO THAT PORTION OF MORTGAGEE'S PROOF OF CLAIM WHICH APPLIES PRESENT VALUE INTEREST ON MORTGAGEE'S PREPETITION ARREARS

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before the Court on the motion of Rita Hardware ("Debtor"), a Chapter 13 debtor seeking an order expunging, voiding, disallowing or reclassifying the proof of claim of Ontra, Inc. ("Ontra"), a secured creditor which holds a first mortgage on the Debtor's residence. Debtor objects to said Proof of Claim insofar as it provides for the payment of interest on Ontra's prepetition arrears. Ontra opposes on the ground that such interest is proper under the circumstances in order to properly cure Ontra's claim and provide it with the present value of its arrears. After deliberation and consideration of the facts and issues raised herein, for the reasons hereinafter set forth, the Debtor's motion to deny Ontra the present value of its prepetition arrears by disallowing that portion of its claim for said interest is denied to the extent hereinafter set forth.

### FACTUAL BACKGROUND

On October 14, 1987, Debtor entered into an agreement with Citibank, N.A. (hereinafter "Citibank"), in which Citibank loaned Debtor $132,000.00 in exchange for Debtor's note and an accompanying mortgage on the Debtor's residence located in Rosedale, NY. The note required monthly payments of principal and interest at an initial annual rate of 10.875% and was subject to change, based on an agreed upon index, every six months. The note and mortgage were subsequently assigned to Ontra.

While it appears that the Debtor initially made the required monthly payments, she eventually defaulted, failing to make the payment due March, 1992, and each payment due thereafter. As a result of the defaults, Citibank eventually commenced a foreclosure action against the Debtor in the Supreme Court of the State of New York. Subsequently, on October 3, 1994, in order to stay the foreclosure sale, the Debtor initiated the within case by filing a petition for relief under Chapter 13 of the Bankruptcy Code.

The Debtor's schedules listed Citibank as the Debtor's only liability and referred to the foreclosure proceeding in her statement of

affairs.[1] Concurrent with the filing of the Debtor's petition, she submitted a plan as required by the Bankruptcy Code ("Code"). It provided for the complete repayment over five years of Citibank's arrears, including late charges and attorney's fees, totalling $50,439.53 ("arrears"), payable in monthly disbursements of $841.00. Nothing in the plan provided for the payment of interest on the arrears. A copy of the plan was served on Citibank and its attorney's, Berkman, Henoch, Peterson & Peddy, P.C. Thereafter, on November 7, 1994, the Debtor amended her plan to include the payment of interest on the arrears at the rate of 5 percent per annum. The plan, as amended, also included a provision which apportioned 10 percent of the arrears as the Chapter 13 Trustee's fee. Debtor's monthly payments were now set at $971.00.

On March 7, 1995, the Debtor again amended her plan. With this revision, Debtor deleted that portion of the plan which provided for the payment of interest on the arrears. Because the plan failed to account for a reduction in the monthly payments resulting from the removal of the interest payments, the Debtor again amended the plan (hereinafter "amended plan") dated April 12, 1995, whereby monthly payments were now set at $925.00.

The Debtor's "amended plan" was considered for confirmation at a hearing before this Court on April 12, 1995, the same date the amended plan was filed. As of that date, however, no proof of claim was filed by Citibank, nor did it appear at the hearing. The Chapter 13 Trustee objected to confirmation on the ground that notice of the hearing had not been given to Citibank. The court, in its discretion, agreed to confirm the Debtor's plan conditioned on the Debtor giving proper notice to Citibank so as to enable it to object to the amended plan and, if the objections were so filed and found valid by this Court, the confirmation order would be set aside. The court directed the Debtor to give Citi-

bank 15 days to object. Finally, upon the Trustee's oral motion, the court ordered the debtor to file a proof of claim on behalf of Citibank. Such a claim was thereupon filed for Citibank in the sum of $195,417.59, consisting of approximately $145,000.00 for the principal and $50,439.53 representing the arrears.

As appears from the record taken before this Court, Citibank had assigned the note and mortgage to Ontra after the within case was initiated. It was also determined on the record that both Citibank and Ontra were represented by the same aforesaid law firm. It is noted that all of the Debtor's Affidavits of Service refer to service of all notices in the case on that firm. Based upon a review of the case file, it is probable that the Debtor was not aware of the assignment.[2] Nevertheless, in light of the Court's decision to permit Citibank to object to Debtor's confirmation and to file a proof of claim, Ontra, as its assignee, filed such claim and objected to the amended plan on April 25, 1995, within the 15 days as fixed by the Court.

Ontra's proof of claim amounts to $220,199.08. An attachment to the proof of claim reflects that this dollar amount is comprised of:

| | |
|---|---|
| 32 MONTHS AT $1,719.00: | $ 55,008.00 |
| LATE CHARGES: | $ 877.76 |
| BANKRUPTCY LEGAL FEES: | $ 375.00 |
| FORECLOSURE FEES: | $ 450.00 |
| FORECLOSURE DISBURSEMENTS: | $ 490.99 |
| UNAPPLIED FUNDS: | $ −3,420.00 |
| TOTAL: | $ 53,781.75 |
| 10% INTEREST/60 MONTHS | $ 14,789.98 |
| TOTAL ARREARS AND INTEREST: | $ 68,571.73 |
| PRINCIPAL BALANCE | $151,627.35 |
| TOTAL PRINCIPAL AND ARREARS | $220,199.08 |

Upon receiving Ontra's proof of claim, Debtor objected to that portion of the claim which called for interest on the arrears, late charges, bankruptcy legal fees, foreclosure fees, and foreclosure disbursements. There is no provision in the mortgage documents which provides for the payment of interest on arrears.

---

1. By an order dated November 14, 1994, the Debtor's schedules were subsequently amended to include Chemical Bank as the holder of an unsecured nonpriority claim in the amount of $5,961.00, representing consumer credit card debt.

2. This is supported by Debtor's letter, dated April 13, 1995, in which she supplied *Citibank*, and not Ontra, with the notice of its "amended plan," as was required by this court the previous day.

This court heard arguments from both sides and reserved its decision. The issue before this court is whether Ontra is entitled to receive present value, in the form of post-confirmation interest, on its prepetition arrears being cured under the Debtor's plan.

## DISCUSSION

■ Interest on prepetition arrears for the period following plan confirmation has posed significant issues to the bankruptcy community. In *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), the Supreme Court granted post-confirmation interest to a home mortgage lender in a Chapter 13 case. The Court held that the ability to award such interest lies in sections 1322 and 1325 of the Code.[3] Under section 1322(b)(5), a plan may "provide for the curing of any default ... and maintenance of payments while the case is pending" notwithstanding section 1322(b)(2)'s protection of home mortgage lenders.[4] Section 1325(a)(5)(B) provides for the conditions re-

quired to confirm a plan.[5] In explaining section 1325(a)(5), the *Rake* Court stated that

unless the creditor accepts the plan or the debtor surrenders the collateral to the creditor [under section 1325(a)(5)(A) and (a)(5)(C), respectively], section 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim, must equal the present dollar value of such claim as of the confirmation date.

*Rake*, 508 U.S. at ——, 113 S.Ct. at 2191 (citations omitted).

As the *Rake* court stated, section 1325(a)(5)(B) "requires all holders of 'allowed secured claims' to be paid the present value of such claims, which implies the payment of interest." *Id.*

The *Rake* decision dealt with an *oversecured* mortgagee, thus leaving unclear the question of whether an *undersecured* home mortgage lender, such as the lender in the instant case, is also entitled to the same relief.[6] Many lower courts have struggled

---

**3.** Although the recent introduction of section 1322(e), effective October 22, 1994, has technically overruled *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), that section does *not* apply to agreements, such as the one before this Court, entered into before October 22, 1994. Section 1322(e) reads as follows:

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure this default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.

"While the legislative history clarifies that this includes refinancing agreements entered into after [October 22, 1994], this means that many debtors will continue to have to pay extra interest to cure their mortgages for years after the enactment of section 1322(e)." 5 *Colliers on Bankruptcy*, ¶ 1322.16 (Lawrence P. King 15th ed.); *see also Colliers* ¶ 1322.09 ("The legislative history is clear that Congress intended to overrule the decision in *Rake v. Wade*, but only prospectively.").

**4.** Section 1322(b)(2) provides that a Chapter 13 plan of confirmation may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims...."

Section 1322(b)(5) provides that "notwithstanding paragraph (2) of this subsection, [a plan

may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

**5.** Section 1325(a)(5) reads as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder....

**6.** In granting post-confirmation interest to the oversecured mortgagee in *Rake*, the Court, keying in on the phrase "provided for" in section 1325(a)(5), stated that interest had to be paid to "each allowed secured claim provided for by the plan." *Rake*, at ——, 113 S.Ct. at 2192 (quoting § 1325(a)(5)). The plan in *Rake* provided for the mortgagee's claims "by establishing repayment schedules for the satisfaction of the arrearages portion of those claims." *Rake*, at ——, 113

with this same issue. *See, e.g., In re Arvelo*, 176 B.R. 349 (Bankr.D.N.J.1995) (undersecured mortgagee was entitled to interest to extent that the arrears were included in the allowed secured claim); *In re Casey*, 159 B.R. 963 (Bankr.M.D.Ala.1993) (mortgagee was entitled to interest on the arrears when secured by the mortgage regardless of mortgagee's secured status); *In re Callahan*, 158 B.R. 898 (Bankr.W.D.N.Y.1993) (holding that Chapter 13 cure requirements of sections 1322 and 1325 require interest on arrears). *See also In re Harned*, 166 B.R. 255, 260 (Bankr.E.D.Pa.1994) (Discussing, in dicta, Supreme Court's failure to include undersecured mortgagees in *Rake* holding, concluding that the Court could have included such mortgagees if it meant to so hold.).

The *Callahan* decision disposed of similar issues in several cases involving the payment of interest on arrears. The decision dealt with cases in which the mortgagee was oversecured; cases in which the mortgagee was oversecured as to the underlying debt but undersecured when the arrears are combined with that debt; and cases in which the mortgagee was completely undersecured. According to *Callahan*, however, these distinctions are irrelevant. It held that when determining the disposition of prepetition arrears, bankruptcy courts must focus their attention towards the resolution of an equitable cure under 1322(b)(5). *See Callahan*, 158 B.R. at 903–04. "With that focus," stated the court, "there is no inconsistency or inequity if the cure of an undersecured mortgage is the same as an oversecured mortgage." *Id.* at 904.[7]

A major factor in *Callahan* was the realization that a debtor may be given up to 5 years in a plan to pay back thousands of dollars in arrears which should have been paid to the lenders before it went into bankruptcy. Some of the debtors in *Callahan*

owed arrears in excess of $13,000.00. *Id.* at 904. In the case at bar, the Debtor has acknowledged to owing Ontra over $50,000.00 in arrears. To allow the Debtor the additional time to pay the arrears without interest to compensate for the time value of money

> would be inequitable to the mortgage holder and might be seen as rewarding some debtors for not paying their mortgages or not filing Chapter 13 at an earlier and more appropriate time when the arrearages were less extensive.

*Callahan*, 158 B.R. at 904.

Clearly, a mortgagee whose arrears are paid over the life of the plan *without present value*, would not be placed in anything similar to his pre-default status.

This Court is convinced that any mortgagee, whether fully secured or undersecured, is entitled to the present value of its prepetition arrears, for the sheer reason that it would be inequitable not to provide such relief. By failing to grant post-confirmation interest, bankruptcy courts would be promoting "an inequitable and unrealistic interpretation of the concept of cure to the extent that cure requires a meaningful return to pre-default conditions." *Callahan*, 158 B.R. at 904. *See also Di Pierro v. Taddeo (In re Taddeo )*, 685 F.2d 24, 26–27 (2d Cir.1982) ("Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code.").

■ As acknowledged by *Rake*, although section 1322(b)(5) "authorizes a Chapter 13 plan to provide for payments on arrearages to effectuate a cure after the effective date of the plan, nothing in that provision dictates the terms of the cure." *Rake*, at ——, 113 S.Ct. at 2192. *See also Callahan*, 158 B.R. at

S.Ct. at 2192. The Court determined that, notwithstanding the prohibition against home mortgage modification of 1322(b)(2), a plan which cures arrears on a home mortgage is tantamount to "providing for" the mortgagee's "allowed secured claims" under section 1325, thus enabling the mortgagee to receive post-confirmation interest under 1325(a)(5)(B)(ii). *Rake*, at ——, 113 S.Ct. at 2192–93; 5 *Colliers on Bankruptcy*

¶ 1325.06; *In re Arvelo*, 176 B.R. 349, 353 (Bankr.D.N.J.1995).

7. The Debtor erroneously concludes that *Callahan* is intended to provide interest only to oversecured creditors when, in fact, the holding encompassed all creditors, fully secured or not. Debtor's Reply Affirmation, Dated July 7, 1995, ¶¶ 1–3.

901 ("However, the Bankruptcy Code, court decisions, definitions of cure, and underlying mortgage documents do not provide clear guidance on how to actually effect a cure."). Noting this lack of guidance, the Callahan court asserted the following as being critical to the establishment of an "equitable cure":

(1) the policy of the Bankruptcy Code to allow debtors proceeding in good faith to cure home mortgage defaults and save their homes whenever reasonably possible; (2) the policy of the Bankruptcy Code, expressed by Section 1322(b)(2), to treat holders of home mortgages in some respects differently and more favorably than other creditors, in order to encourage lenders to continue making home mortgage loans to facilitate the purchase of homes; (3) the need to further an effective Chapter 13 program which accomplishes all of the goals of Chapter 13, including allowing debtors to propose and have confirmed plans which allow them to save their homes and to have those plans confirmed in a cost effective manner; and (4) the rights and remedies of the parties outside bankruptcy in state court mortgage foreclosure proceedings.

*Callahan,* 158 B.R. at 902.

The court further indicated, however, that to ascertain the correct terms of an equitable cure on a case-by-case basis would be impractical and expensive to the parties involved and would "delay the confirmation and completion of many Chapter 13 plans...." *Id.* at 902. Therefore, in order to expedite cases dealing with this issue, and to provide debtors and home mortgage lenders with what it perceived to be the fairest and simplest result, *Callahan* held that a Chapter 13 plan must include repayment of arrears together with a present value factor "equal to the New York judgment interest rate until such arrearages are paid in full." *Id.* at 903.[8]

A number of other courts have addressed the issue of what interest or discount rate should be applied in order to provide a prop-er present value factor. *See, e.g., In re Clark,* 168 B.R. 280 (Bankr.W.D.N.Y.1994) (applying New York State judgment interest rate as present value factor); *In re Fisher,* 29 B.R. 542 (Bankr.Kan.1983) (holding IRS entitled to discount rate equal to one percent over the treasury bill equivalent rate); *Blinde v. Spader (In re Spader),* 66 B.R. 618 (W.D.Mo.1986) (state judgment rate); *Campbell v. Ford Motor Credit Co. (In re Campbell),* 16 B.R. 496 (Bankr.N.D.Ill.1982) (cost of funds approach); *In re Jordan,* 130 B.R. 185 (Bankr.D.N.J.1991) (prime rate). In order for this court to reach its conclusion, it is first necessary to look towards the meaning of "present value." In the oft-cited case of *In re Fisher,* the court clearly explains that:

'Present value' or the 'time value of money' is not a legal concept, but rather it is a term of art in the financial community. It simply means that a dollar received today is worth more than a dollar received in the future. To compensate the creditor for not receiving its money today, the debtor is charged an additional amount of money. The charge is based on a rate of interest called a 'discount rate.' The discount rate is used to calculate how much the creditor should be paid so it will have the same amount of money in the future as it would have if it did not have to wait to be paid.

*Fisher,* 29 B.R. at 543 (citations omitted).

As has been noted above, in determining the discount rate, courts have looked to the "contract rate, treasury bill rate, federal judgment rate, state judgment rate, prime rate (in some cases adjusted by a risk factor), cost of funds rate, and coerced loan rate." *Clark,* 168 B.R. at 282–83 (citations omitted). Unfortunately, the *Rake* case failed to offer any advice on this point except to say that the present value factor must "compensate the creditor for the decreased value of the claim caused by the delayed payments." *Rake,* at —— n. 8, 113 S.Ct. at 2192 n. 8.

---

8. In its decision to apply the New York judgment interest rate ("NYJIR"), the court took into consideration the NYJIR's administrative convenience, as well as a number of factors which included *inter alia:* (i) the NYJIR is equal to what the debtors would pay on a judgment of foreclosure and sale; (ii) benefits to both the debtor and mortgagee would balance out over time; (iii) resolves issue of reasonable time to cure required in 1322(b)(5); and (iv) reduces overall costs of confirmation. *Callahan,* 158 B.R. at 903 n. 5.

The Second Circuit Court of Appeals is also silent on this matter.

This Court has contemplated the factors taken into consideration by the foregoing bankruptcy courts in New York when they applied the New York judgment interest rate of 9 percent as the present value factor. Inasmuch as that rate creates uniformity and is administratively convenient to the Court, the Trustee, the debtor and her attorneys, and is manifestly fair, this court holds that the interest rate should be set at 9 percent per annum.

█ In addition to the payment of the arrears in the sum of $55,008.00 with interest at the rate of 9 percent per annum, all of the remaining charges, fees and expenses should also be paid with interest at the same rate except for that portion of the claim seeking bankruptcy fees, in the sum of $375.00, which is disallowed in its entirety. This Court's conclusion is based on the rationale that such expenses, other than the bankruptcy fees, were deemed part of the Debtor's obligation to pay in accordance with the terms of the mortgage which became due as of the date of the filing of the petition in bankruptcy herein. Thus, interest shall be computed commencing with the date of the filing of the petition.

█ Finally, this Court addresses the Debtor's objection regarding section 502(b)(2) in which she asserts that interest on arrears is prohibited in accordance with that section's ban on "unmatured interest." [9] This Court is of the opinion that awarding the present value of arrears to a mortgagee whose claim is being cured under a Chapter 13 debtor's plan is not the type of interest that Congress had in mind when it created that section. Instead, the legislative intent was to disallow any claim for prepaid interest not yet earned. In effect, 502(b) "operates as the acceleration of the principal amount of all claims against the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 352–54 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 62–65

(1978). Nothing in the legislative history leads this Court to believe that the payment of interest on arrears, as part of a cure under section 1322(b)(2), is proscribed by section 502(b)(2).

### CONCLUSIONS

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding pursuant to § 157(b)(1), (b)(2)(B) and (b)(2)(L).

2. The Debtor's objection to Ontra's claim is DENIED to the extent set forth above.

SETTLE AN ORDER CONSISTENT WITH THIS OPINION.

---

9. Section 502(b) reads as follows:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(2) such claim is for unmatured interest....