**In re Salvatore DOMINICK (Deceased) and Naomi Dominick, d/b/a/ Woozie Enterprises, Inc., Debtors.**

**Bankruptcy No. 96–12212.**

United States Bankruptcy Court, N.D. New York.

Jan. 28, 2000.

Delorenzo, Pasquariello & Weiskopf, P.C., Schenectady, New York, for the debtors, Richard H. Weiskopf, of counsel.

Office of Schenectady County Attorney, Schenectady, New York, William G. Osta, Assistant County Attorney, of counsel.

Deily Dautel & Mooney, LLP, Amicus Curia on behalf of Washington County Treasurer and City of Ogdensburg, Albany, New York, Linda T. Taverni, of counsel.

Office of Albany County Attorney, Amicus Curia, Albany, New York, Michael C. Lynch, Albany County Attorney, Stephen M. Nagle, of counsel.

## MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, Jr., Bankruptcy Judge.

The issue presented in this case is what is the appropriate rate of post-confirmation[1] interest that is to be paid an oversecured tax creditor in a Chapter 13 plan. This matter is a core proceeding within this court's jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and § 157(b)(2)(B).

## FACTS

Based upon the pleadings before it, this court finds that the facts are as follows:

(1) Salvatore Dominick, subsequently deceased, and Naomi Dominick, d/b/a Woozie Enterprises, Inc. (hereinafter

---

1. This court is mindful that there are three separate and distinct time periods implicated in this case. The first is pre-petition. The second is post-petition but pre-confirmation. The third is post-confirmation. In previous cases this court and the Second Circuit have combined the first and second time periods and have issued rulings concerning pre and post-confirmation. *See Key Bank v. Milham,* 141 F.3d 420 (2d Cir.1998); *In re Valenti,* 105 F.3d 55 (2d Cir.1997). The facts of this case do not compel a different analysis and this court's findings with respect to pre-confirmation interest includes both pre-petition and post-petition until confirmation.

"Debtors") filed a Chapter 13 petition on April 26, 1996.

(2) The County of Schenectady (hereinafter "County") filed an original proof of claim in the amount of $36,344.50. The County subsequently filed several amended proofs of claim in the following amounts:

    (A) $7,821.99

    (B) $7,149.57

    (C) $6,555.44

    (D) $9,061.81

    (E) $9,037.16

    (F) $8,945.16

    (G) $7,676.48.

(3) The basis of the County's claims are unpaid taxes, plus interest, on the Debtors' property.

(4) Pursuant to New York State Real Property Tax Law § 902 [2] upon the nonpayment of taxes, a lien arises upon the subject property. In the event of late payment section 924(a) of this statute articulates how interest rates should be computed but avers that in no instance should the interest rate be less than 12%.[3]

(5) The Debtors objected to these filed claims contending that the New York State statutory interest rate is inappropriate for post-confirmation payments.

(6) A hearing was held to attempt to determine the appropriate interest rate.

Briefs were submitted by the County and the Debtor. In addition, amicus briefs were filed on behalf of Albany and Washington Counties and the City of Ogdensburg.

(7) Both parties agree that the County is oversecured.

## ARGUMENTS

The County, and amici in support, contend that sufficient factual distinctions exist to compel this court to depart from its decision in *Key Bank v. Milham.*[4] Relying upon these distinctions, the County argues that the proper rate of post-confirmation interest can be ascertained by looking to the State statute which created the lien in the first instance. As noted above, New York's Real Property Tax Law created this lien. This statute mandates a minimum interest rate of 12%.

The Debtors concede that they are liable for the 12% interest rate pre-confirmation.[5] However, they argue that the 12% statutory interest rate is inappropriate post-confirmation and they urge this court to find that the proper interest rate would be the current rate of interest on a Federal Treasury Bill.

## DISCUSSION

■ For over a decade it has been established that a non-consensual, overse-

---

**2.** New York State Real Property Tax Law § 902 states,

> The amount of all taxes, special valorem levies and special assessments levied upon any parcel of real property by the board of supervisors shall, ... be and become a lien thereon as of the first day of January of the fiscal year for which levied and shall remain a lien until paid.

**3.** New York Real Property Tax Law § 924(a) states, in part:

> (2) On or before the fifteenth day of July in each year the commissioner of taxation and finance shall determine the one-year constant maturity yield index for United States treasury securities for the quarter-year ending on the immediately preceding June thirtieth. Such index, rounded to the nearest one-tenth

of a percentage point, shall be the rate of interest prescribed by this subdivision, which rate will be effective for all warrants issued for a collection period commencing on or after the first day of September next succeeding the date the rate of interest is determined. *Provided, however, such interest rate shall in no event be less than twelve per centum per annum* ... (emphasis added.)

**4.** This case was actually two consolidated cases, *Key Bank v. Harko,* 211 B.R. 116 (2d Cir. BAP 1997) *and Key Bank v. Milham* (hereinafter *"Milham"*). This court's decision was an oral decision which was affirmed by the Bankruptcy Appellate Panel. The Second Circuit also affirmed and this decision can be found at 141 F.3d 420 (2d Cir.1998)

**5.** *See* n. 1.

cured creditor is entitled to receive post-petition interest on its claim. *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). This is true even if the underlying agreement that has given rise to the claim is silent with respect to interest. *Id.* Furthermore, it has been settled that the interest rate to be charged post-confirmation must be one which affords the creditor the "present value" of the claim. *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In *Rake,* the Supreme Court illuminated the concept of present value stating, "When a claim is paid off pursuant to a stream of future payments, a creditor receives the 'present value' of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments." *Id.* at 472 n. 8, 113 S.Ct. 2187. Although the Court explained that present value includes an amount of interest, it did not dictate any specific rate.

Various courts have attempted to address this issue and a variety of computations have emerged. *See In re Hardware,* 189 B.R. 273 (Bankr.E.D.N.Y.1995) (Appropriate rate of interest to provide mortgagee with present value of arrearage claim is the New York judgment rate of 9%); *In re Clark* 168 B.R. 280, (Bankr. W.D.N.Y.1994) (New York judgment rate of 9% is the appropriate postconfirmation rate to be paid for unpaid taxes on Chapter 13 debtors' residence); *In re DeMaggio,* 175 B.R. 144 (Bankr.D.N.H.1994) (Riskless rate plus an additional 1% risk increment is the appropriate rate for unpaid property tax in a chapter 13 proceeding); *In re Davison,* 106 B.R. 1021 (Bankr. D.Neb.1989) (State statutory rate of 14% is not a penalty and appropriate rate for plan). These decisions obviously diverge

on the appropriate rate of interest to obtain present value. However, all these decisions pre-date *Milham.*

In *Milham,* the debtors/defendants owed approximately $3,000.00 on a vehicle that had been valued at approximately $12,000.00. The creditor was oversecured. The interest rate of the contract giving rise to the lien was set at 9.5%. The creditor argued that it was entitled to this rate of interest post-confirmation. This court disagreed and held that the proper rate of interest is the rate on a Treasury instrument with an equivalent maturity to the plan, plus a risk factor of 1%–3%.

In affirming the *Milham* decision, the Second Circuit analyzed both 11 U.S.C. § 506(b) and 11 U.S.C. § 1325(a)(5)(B), the sections at issue in the present matter, ultimately concluding that the creditor was entitled to receive the contract rate of interest until the confirmation of the plan. Once confirmation takes place the creditor is entitled to receive the "present value" of its claim. The Second Circuit stated:

> Accordingly, we hold that an oversecured creditor such as Key Bank is entitled to receive § 506(b) interest only until the confirmation date of the Chapter 13 reorganization plan. At that time, the accumulated pendency interest becomes a part of the allowed secured claim, and the plan must provide for payment of the present value of such allowed claim as of the effective date of the plan. Present value is achieved by the payment of interest at a rate calculated in accordance with our holding in *In re Valenti.*[6] Because the post-confirmation rate in the confirmed plan at issue was so calculated, the bankruptcy court decision confirming the plan, and the Bankruptcy Appellate Panel affirming the confirmation, are affirmed. *Id.* at 425.

---

**6.** In the case *In re Valenti,* the Second Circuit held that the proper rate of interest, to be paid as a part of a Chapter 13 plan should be fixed at the rate of a United States Treasury instrument with maturity equal to the repayment schedule with a premium of 1% – 3% to reflect the creditor's risk. *See In re Valenti,* 105 F.3d at 63–64.

As noted earlier, the County argues that notwithstanding this previously rendered decision, sufficient cause exists for this court to deviate from the *Milham* rationale. In *Milham* the creditor was a consensual, contractual lien holder. The primary contention of the County is that it is a non-consensual tax creditor whose lien arose by operation of law. Therefore, according to the County the interest rate is dictated by the state statute not the formula set forth in *Milham.*

This court is mindful of the distinctions between the present case and *Milham,* but they do not rise to a level that compels a different result. This is especially true because the *Milham* computation includes a variable risk factor which is designed to accommodate any factual distinctions that may arise.

## STATE STATUTORY RATE vs. CONTRACT RATE

■ The County is attempting to differentiate itself from the creditor in *Milham* by asserting that the State statutory interest rate should be afforded greater deference than a rate established by contract. It invokes the *Erie*[7] doctrine, arguing that the State has established a proper interest rate and that this court should refrain from any other determination of this matter.

This court will always hesitate before redressing a State statute. However, it is also bound to ensure that the provisions of the Bankruptcy Code are given their full force and effect. If a conflict between a State law and the Federal law should occur then the state statute must yield.[8] In the present case, there is not a direct conflict between the State statute and the Code. However, to allow the State statute to determine the interest rate would be to allow sections 506(b) and 1325(a)(5)(B)(ii) to be undermined. *See Key Bank v. Milham,* 141 F.3d at 425; *In re Valenti,* 105

F.3d at 64. This court cannot condone such a result.

In addition, contrary to the County's assertion, section 924(a) does not accommodate market changes to reflect a varying interest rate. The statute does have a formula for calculating interest, however, it ultimately provides that the interest rate can never be less than 12% per annum.[9] Any flexibility in this statute is negated by this 12% clause. This type of unwavering, unresponsive threshold level contradicts the flexible, responsive concept of "present value" as viewed by the Supreme Court, the Second Circuit and this court. If this statute had not set a minimum level then perhaps a different result could have been reached. Finally, the County's argument that they should receive special consideration is properly directed to the legislative branch of government and this court will not enter that realm.

■ The risk factor in the present real property case is negligible. The creditor is oversecured and unlike personal property such as a motor vehicle, real property and the buildings attached thereto, are not as easily subject to damage and destruction. Even if a catastrophe should occur the land would still be of value such that the County would be oversecured. Therefore, this court holds that the proper risk factor in this case is 1%.

This court finds that the appropriate rate of post-confirmation interest is the amount equal to the interest rate of a Treasury instrument with an equivalent maturity to the plan, plus a risk factor of 1%.

It is so ORDERED.

7. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)

8. U.S. Const. art. I, cl. 2

9. *See* n. 3